1   David W. Shapiro (SBN 219265)
    dshapiro@nortonlaw.com
2   Fred Norton (SBN 224725)
    fnorton@nortonlaw.com
3   Matthew W. Turetzky (SBN 280997)
    mturetzky@nortonlaw.com
4   THE NORTON LAW FIRM P.C.
    299 Third Street, Suite 106
5   Oakland, California 94607
    Telephone:(510) 906-4900
6

7   Attorneys for Plaintiff
    MARC COHODES
8

9

10                  **UNITED STATES DISTRICT COURT**

11                 **NORTHERN DISTRICT OF CALIFORNIA**

12                   **SAN FRANCISCO DIVISION**

13

14      MARC COHODES, an individual,              CASE NO.

15              *Plaintiff,*

16          v.                                    **COMPLAINT FOR DECLARATORY
                                                  AND INJUNCTIVE RELIEF FOR**
17      UNITED STATES DEPARTMENT OF               **VIOLATIONS OF THE FREEDOM**
        JUSTICE, FEDERAL BUREAU OF                **OF INFORMATION ACT**
18      INVESTIGATION, and EXECUTIVE
        OFFICE FOR UNITED STATES
19      ATTORNEYS,

20              *Defendants.*

21

22

23

24

25

26

27

28

                            COMPLAINT

## SUMMARY OF THE ACTION

1. This Freedom of Information Act (FOIA) lawsuit seeks the production of certain records in the possession of the Department of Justice (DOJ), the Federal Bureau of Investigation (FBI), and the Executive Office for United States Attorneys (EOUSA).

2. The records at issue relate to communications between MiMedx Group, Inc. (MiMedx) and its officers, directors, employees, and agents, including, without limitation, its former Chief Executive Officer, Parker "Pete" Petit, and retired United States Senator Johnny Isakson referring or relating to Plaintiff Marc Cohodes. Petit was a major contributor to Senator Isakson.

3. Disclosures to date reveal that Petit and his colleagues asked Isakson and his staff to encourage the FBI to take action against Cohodes, after Cohodes publicly criticized MiMedx and Petit. (Senator Isakson and his staff, and others working on his behalf or speaking in his name, are referred to hereafter as "Isakson.")

4. In response to Isakson's communications, two FBI Special Agents confronted Plaintiff Marc Cohodes, his wife, and his son at their home in Sonoma County. The FBI Special Agents told Cohodes (and subsequently Cohodes's lawyer), among other things, that Cohodes should stop making comments about Petit and MiMedx, and that if he did not, then there would be "consequences."

5. The FBI's conduct was part of an ongoing campaign by MiMedx and Petit to silence Cohodes's criticisms of MiMedx and Petit, punish Cohodes for criticizing MiMedx and Petit, and violate Cohodes's First Amendment rights. It was further part of a broader scheme to silence and intimidate critics of MiMedx and Petit (other than Cohodes) who feared the same kind of heavy-handed and illegal conduct directed at Cohodes. Those campaigns to threaten, intimidate, and silence were accomplished through an improper relationship between a United States Senator, Petit, and government agencies responsible for enforcing federal criminal law.

6. In and after January 2020, Cohodes submitted FOIA requests seeking the communications between Isakson and any component agency of the DOJ (including, without

limitation, the FBI and the United States Attorney's Office for the Southern District of New York) that relate to Cohodes.

7.     The government agencies either ignored Cohodes's requests or, in the case of the FBI, produced only a few documents.  These documents contained significant redactions that are not justified by any FOIA exemption.  Cohodes submitted timely appeals, which were denied or ignored.

8.     This lawsuit seeks to compel the government to produce documents that will reveal the FBI's misconduct in violating Cohodes's First Amendment rights, improper influence brought to bear by Petit and his cohorts on a politician, and MiMedx's efforts to silence critics in violation of federal securities laws.

## THE PARTIES

9.     Plaintiff Marc Cohodes is an individual who resides in Sonoma County, California.

10.     Defendant United States Department of Justice is a government agency within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered in Washington, District of Columbia.

11.     Defendant Federal Bureau of Investigation is a component of the United States Department of Justice.  The Federal Bureau of Investigation is an agency within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered in Washington, District of Columbia.

12.     Defendant Executive Office for United States Attorneys is a component of the United States Department of Justice that provides executive and administrative support for the 93 United States Attorneys located throughout the 50 states, the District Columbia, and various United States territories.  The Executive Office for United States Attorneys is an agency within the meaning of 5 U.S.C. § 552(f)(1) and has 93 field offices throughout the United States.

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has

1  jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346.

2      14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a

3  substantial part of the events giving rise to the claims occurred in this District, and pursuant

4  to 5 U.S.C. § 552(a)(4)(B) because complainant Cohodes resides in this District.

5                        **INTRADISTRICT ASSIGNMENT**

6      15.     Cohodes resides in Sonoma County.  Pursuant to Civ. L.R. 3-2(c), intradistrict

7  assignment in the San Francisco or Oakland Division is proper.  This filing is captioned for

8  the San Francisco Division because, pursuant to General Order No. 73, the Northern

9  District's operations have been consolidated to the San Francisco Division and the Oakland

10  courthouse is closed.

11                          **FACTUAL BACKGROUND**

12  **A. The Government's Efforts to Silence Cohodes**

13      16.     Cohodes is a long-time stock market analyst who has provided valuable

14  information to the Securities and Exchange Commission and the Department of Justice.

15  Cohodes's information has led to federal civil and criminal law enforcement actions against

16  executives at companies such as Lernout & Hauspie, Media Vision Technology, NovaStar

17  Financial, AremiSoft, California Micro Devices, Network Associates, TakeTwo Interactive,

18  Krispy Kreme Donuts, Boston Chicken, and others.

19      17.     In about September 2017, Cohodes began to follow allegations about securities

20  and FDA improprieties at MiMedx.  He became a vocal critic, posting negative information

21  about MiMedx's publicly reported financial results and about the safety of MiMedx's

22  products.  Cohodes wrote to the company's Board of Directors and its top management, as

23  well as its auditors, about his concerns.  Because he made no secret about his own identity,

24  former and current employees reached out to Cohodes with information about wrongdoing at

25  MiMedx, including wrongdoing by its CEO Parker "Pete" Petit.

26      18.     Petit and MiMedx responded to Cohodes's criticisms by attacking Cohodes.

27  They and their shills made false claims about the legality of Cohodes's short sales, sent

28  personal attacks to Cohodes, and denied there was any validity to Cohodes's (and others')

criticisms of the company's public reporting and FDA compliance. (In the end, Cohodes was proved right over and over again: MiMedx withdrew six years of financial statements, its stock was delisted, it terminated many of its employees, federal prosecutors indicted Petit and MiMedx's COO William Taylor for securities fraud in 2019, and on April 6, 2020 the company announced that it agreed to pay $6.5 million to resolve False Claims Act allegations that it knowingly submitted false information to the Department of Veterans Affairs.)

19.     Before law enforcement cracked down on MiMedx and its executives, however, Petit obtained the FBI's assistance in trying to silence Cohodes. On December 1, 2017 at about 1:20 p.m., two men arrived at Cohodes's home in Cotati, California. They approached Cohodes's wife in the driveway. One man, with dark hair and a beard, quickly flashed a badge and identified himself as an FBI agent. He told Ms. Cohodes not to write down his name or take a photograph. That man then followed Ms. Cohodes as she walked towards her house, even after she asked him to wait in the driveway because Mr. Cohodes's son is disabled and she did not want the son to become alarmed.

20.     Mr. Cohodes then came out of the house. The man asked if there was someplace they could speak privately. The two men, Mr. Cohodes, and Ms. Cohodes then walked into the Cohodes's home. Mr. Cohodes asked if he needed to call his attorney, and the man said "no, this is a courtesy call."

21.     One of the men told Cohodes that he needed to "stop sending threatening tweets" about "Mr. Petit." He read two "tweets" to Cohodes. He repeated several times, "do you understand, do you understand?" Cohodes asked the man several times to verify who they were. One of the men pulled out a business card but refused to give it to Cohodes.

22.     Cohodes then called the police.

23.     Cohodes told the men that they should leave if they did not have a warrant. One of the men told Cohodes that he would leave only when Cohodes acknowledged that the tweets were threats and that he would not post other tweets in the future. The man told Cohodes that "there would be consequences" if he came back to Cohodes's home.

1  24.    During their conversation, Cohodes called his attorney, who then spoke with a

2  man who identified himself as Paul Viglienzone.  After some prodding by counsel, he

3  identified his colleague as Jeremy Heinrich.  Viglienzone advised counsel that both men

4  were FBI Special Agents.  He told counsel he was at the Cohodes residence as a "courtesy"

5  to stop Cohodes from posting "threatening" tweets or else he would come back.

6  25.    Viglienzone read the alleged threatening tweets to counsel and asked counsel

7  several times to tell Cohodes to stop posting "threatening tweets."  Counsel declined to do

8  so.  Counsel asked whether the U.S. Attorney's Office was involved in this investigation,

9  and Viglienzone declined to say.

10  26.    Counsel told Viglienzone that he had communicated what he wanted to

11  Cohodes and asked him to leave Cohodes's property.  Counsel told Viglienzone that if he

12  wished to speak to Cohodes again, then he should contact counsel – and have no further

13  direct communication concerning Cohodes's tweets with Cohodes.

14  27.    Neither of the two FBI agents would leave a business card with Mr. and Ms.

15  Cohodes; both showed only a portion of their credentials. Both acted in a threatening and

16  heavy-handed manner to the Cohodeses and to counsel.

17  28.    As a result of this incident, counsel contacted the FBI and U.S. Attorney Brian

18  Stretch to determine whether the two men were in fact FBI Special Agents.  Counsel had

19  also sought to understand why the FBI was threatening Cohodes at his home over certain

20  tweets that were not in fact "threatening."   Counsel also wrote to FBI director Christopher

21  Wray and the DOJ's Office of Inspector General documenting this incident.

22  29.    After two years of complaints, without a substantive response from the FBI or

23  the DOJ, Cohodes sought information through a FOIA request.

24  **B. The January 15, 2020 FOIA Requests**

25  30.    On January 15, 2020, Cohodes, through counsel, submitted the three requests

26  at issue in this litigation (Requests Nos.  EMRUFOIA011520-3 (DOJ), 1457448-000 (FBI),

27  and EOUSA-2020-001161 (EOUSA)).  Copies of these FOIA requests are attached to this

28  Complaint as Exhibits 1, 2, and 3.

31.     The requests sought "all correspondence and communications between Senator Jonny Isakson, his staff, his employees, or any person acting on his behalf and the [DOJ, FBI, and the U.S. Attorney's Office (USAO) in the Southern District of New York (SDNY)] referring or relating to MiMedx, Parker Petit, or Marc Cohodes" and "all documents and communications in the possession, custody, or control of the [DOJ, FBI, and the USAO SDNY] referring or relating to Marc Cohodes."  The requests included a signed privacy release by Cohodes on form DOJ-361 and his agreement through counsel to pay reasonable duplication fees not to exceed $1,500 per request.  The FOIA requires federal agencies to respond within 20 working days of receiving a request.  5 U.S.C. § 552(a)(6)(A)(i).  The agencies did not respond within the 20 working-day deadline.

32.     The FOIA treats such failures to respond within the statutory time limit as constructive denials.  5 U.S.C. § 552(a)(6)(C)(i).  Any person making a FOIA request is "deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions."  *Id.*

**C.  The February 21, 2020 FOIA Appeals**

33.     Cohodes nevertheless appealed the agencies' constructive denials of his requests on February 21, 2020 to obtain the requested documents through the agencies' internal administrative appeal process.  A copy of Cohodes's appeal is attached to this Complaint as Exhibit 4.  Cohodes submitted the same letter to appeal all three FOIA requests.

34.     The FOIA requires agencies to respond to appeals within 20 working days of receiving the appeal.  5 U.S.C. § 552(a)(6)(A)(ii).  The agencies did not respond within the 20 working-day deadline.

35.     The FOIA treats an agency's failure to timely respond to an appeal as a constructive denial for exhaustion purposes.  5 U.S.C. § 552(a)(6)(C)(i).

**D.  The FBI's March 6, 2020 Response to Cohodes's January 15, 2020 FOIA Request**

36.     On March 6, 2020, the FBI purported to respond to Cohodes's January 15, 2020 FOIA request by producing "documents from previous requests regarding your subject."  The FBI's March 6, 2020 letter is attached to this Complaint as Exhibit 5.

37.     Enclosed with the FBI's March 6, 2020 letter were 12 pages of documents containing numerous redactions.  The enclosed documents are attached to this Complaint as Exhibit 6.

38.     These disclosures reveal that in October and early November 2017, there was a series of emails and calls complaining to Isakson, and Isakson made phone calls to the FBI on behalf of that complainant.  Then, in November 2017, Senator Isakson sent correspondence from a "constituent" (name redacted).  The correspondence appears to be an email relating to communications with an "Agent," about a subject that has been redacted.  In January 2018, the Deputy Assistant Director of the FBI wrote to Isakson assuring him that the matter had been brought to the "attention of appropriate personnel for any action."

39.     Also in January 2018, according to Petit's own website, Petit, Taylor, Lexi Haden (MiMedx's General Counsel), two DOJ "agents", and a DOJ criminal investigator met in New York.  At the meeting, Petit, Taylor, and Haden were asked "to forward to the agents all fraudulent activities that Marc Cohodes was conducting against the Company."  In response to his FOIA request, the DOJ never provided Cohodes any documents reflecting Petit's January 2018 meeting.  A copy of Petit's account of this meeting is attached to this Complaint as Exhibit 7 and is available on the internet at https://www.petepetit.com/mimedx/downloads/background-of-the-investigation.pdf.

40.     Petit, Taylor, and Haden also met with DOJ officials in 2018 specifically to discuss Cohodes.  Petit claims to have provided evidence to DOJ showing that Cohodes had illegally shorted MiMedx shares.  The DOJ never provided Cohodes any documents reflecting what Petit himself claimed had happened, including notes or memoranda of this meeting.  A copy of Petit's account of this meeting is attached to this Complaint as Exhibit 8 and is available on the internet at https://www.petepetit.com/mimedx/downloads/illegal-short-selling-against-mimedx.pdf.

41.     On December 27, 2018, the *Wall Street Journal* published a story describing the FBI agents' visit to Cohodes's home and the involvement of Isakson and Petit.  The story quoted an FBI spokesperson as stating that, "In this instance the Special Agents complied with FBI policy and we consider this matter closed."  A copy of that article is attached to this Complaint as Exhibit 9 and is available on the internet at https://www.wsj.com/articles/sen-johnny-isakson-called-fbi-on-behalf-of-mimedx-group-11545934861.

42.     The government's disclosures are virtually all redacted, and they do not represent all of the communications sought by the FOIA requests.  For example, there are no notes of telephone conversations, no memos between the FBI and any United States Attorney's Office (which were required by the FBI's own policies before infringing on a person's First Amendment rights), no documents from any United States Attorney's Office(s), and no FBI reports of the interview that the FBI conducted of Mr. Cohodes and his wife.

43.     It is in the public interest to know whether a Senator has been the subject of improper influence, whether a Senator has violated the law or his ethical duties, and whether FBI Special Agents have misused their authority to advance the personal interests of someone later indicted for fraud.

**E.  Cohodes's March 11, 2020 FOIA Appeal Supplement**

44.     Cohodes filed a supplement to his pending FBI appeal on March 11, 2020. That supplement is attached as Exhibit 10.

45.     In his March 11, 2020 supplement, Cohodes argued that the FBI's March 6, 2020 response had wrongfully withheld documents under FOIA exemptions (b)(6), (b)(7)(C), and (b)(7)(E).  The FBI never responded to Cohodes's supplement.

**F.  The Executive Office for U.S. Attorneys' March 27, 2020 Response to Cohodes's February 21, 2020 FOIA Appeal**

46.     On March 27, 2020, the EOUSA responded to Cohodes's February 21, 2020 FOIA appeal.  The EOUSA asserted that it had not made an adverse determination on Cohodes's January 15, 2020 FOIA requests, but noted that Cohodes may immediately file a

1  lawsuit because the agency had taken more than 20 days to respond.  *See* 5 U.S.C. §

2  552(a)(6)(C)(i).  The EOUSA's letter is attached as Exhibit 11.

3      47.    Because the DOJ and the EOUSA have not made a determination within the

4  time period required by statute and because the FBI have constructively denied Cohodes's

5  administrative appeal, Cohodes filed this lawsuit.

6                    **FIRST CLAIM FOR RELIEF**

7  **Violation of the Freedom of Information Act for Plaintiff's January 15, 2020 Request**

8                    **to the Department of Justice**

9      48.    Plaintiff repeats and realleges paragraphs 1-47.

10     49.    Plaintiff properly requested the records described in the January 15, 2020

11 FOIA request to the DOJ in compliance with the requirements of 5 U.S.C. § 552 and the

12 applicable internal regulations, 28 C.F.R. § 16.3.

13     50.    The records requested by Plaintiff are under the custody and/or control of the

14 DOJ.

15     51.    The DOJ did not respond to Plaintiff's January 15, 2020 FOIA request within

16 the statutory time limit set forth in 5 U.S.C. § 552(a)(6)(A)(i).  The DOJ's failure to respond

17 amounted to a constructive denial of Plaintiff's January 15, 2020 FOIA request.  5 U.S.C. §

18 552(a)(6)(C)(i).

19     52.    Plaintiff timely appealed the DOJ's constructive denial of Plaintiff's January

20 15, 2020 FOIA request on February 21, 2020.  The DOJ failed to respond to Plaintiff's

21 timely appeal.  The DOJ's failure to respond to Plaintiff's timely appeal amounts to a

22 constructive denial of Plaintiff's appeal.

23     53.    Plaintiff has met the exhaustion requirement because (1) Plaintiff filed a

24 lawsuit after the DOJ failed to respond to his FOIA request within the time limit set forth in

25 5 U.S.C. § 552(a)(6)(A)(i) and (2) Plaintiff attempted to timely appeal the DOJ's

26 constructive denial of Plaintiff's January 15, 2020 FOIA request and the DOJ failed to

27 respond to Plaintiff's appeal within the statutory time limit.

28

54.     The DOJ has wrongfully withheld agency records requested by Plaintiff and has failed to comply with the statutory time limit for processing Plaintiff's January 15, 2020 FOIA request.

55.     The DOJ's wrongful withholding of the records sought by Plaintiff's January 15, 2020 FOIA request violates the FOIA, 5 U.S.C. § 552(a)(3)(A).

56.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents under 5 U.S.C. § 552(a)(4)(B) because the DOJ continues to improperly withhold and/or delay the production of agency records in violation of FOIA.

57.     Plaintiff will suffer irreparable injury from and have no adequate legal remedy for the DOJ's illegal withholding of government documents pertaining to the FBI's participation in the campaigns to threaten, intimidate, and silence critics of a public company through violations of individual constitutional rights.

## SECOND CLAIM FOR RELIEF

**Violation of the Freedom of Information Act for Plaintiff's January 15, 2020 Request to the Federal Bureau of Investigation**

58.     Plaintiff repeats and realleges paragraphs 1-47.

59.     Plaintiff properly requested the records described in the January 15, 2020 FOIA request to the FBI in compliance with the requirements of 5 U.S.C. § 552 and the applicable internal regulations, 28 C.F.R. § 16.3.

60.     The records requested by Plaintiff are under the custody and/or control of the FBI.

61.     The FBI did not respond to Plaintiff's January 15, 2020 FOIA request within the statutory time limit set forth in 5 U.S.C. § 552(a)(6)(A)(i).  The FBI's failure to respond amounted to a constructive denial of Plaintiff's January 15, 2020 FOIA request.  5 U.S.C. § 552(a)(6)(C)(i).

62.     When the FBI did respond on March 6, 2020, it wrongfully redacted and withheld documents under FOIA exemptions (b)(6), (b)(7)(C), and (b)(7)(E).  Those exemptions do not apply to Cohodes's requests.

63.     Plaintiff timely appealed the FBI's constructive denial of Plaintiff's January 15, 2020 FOIA request on February 21, 2020.  When the FBI finally responded to Plaintiff's January 15, 2020 FOIA request on March 6, 2020, Plaintiff promptly supplemented his appeal on March 11, 2020 to challenge the FBI's response.  The FBI failed to respond to Plaintiff's timely appeals.  The FBI's failure to respond to Plaintiff's timely appeals amounts to a constructive denial of Plaintiff's appeals.

64.     Plaintiff has met the exhaustion requirement because Plaintiff timely appealed the FBI's constructive denial of Plaintiff's January 15, 2020 FOIA request and the FBI's adverse determination of March 6, 2020.  The FBI failed to respond to Plaintiff's appeals within the statutory time limit.

65.     The FBI has wrongfully withheld agency records requested by Plaintiff and has failed to comply with the statutory time limit for processing Plaintiff's January 15, 2020 FOIA request.

66.     The FBI's wrongful withholding of the records sought by Plaintiff's January 15, 2020 FOIA request violates the FOIA, 5 U.S.C. § 552(a)(3)(A).

67.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested documents under 5 U.S.C. § 552(a)(4)(B) because the FBI continues to improperly withhold and/or delay the production of agency records in violation of FOIA. Plaintiff will suffer irreparable injury from and have no adequate legal remedy for the FBI's illegal withholding of government documents pertaining to the FBI's participation in the campaigns to threaten, intimidate, and silence critics of a public company through violations of individual constitutional rights.

## **THIRD CLAIM FOR RELIEF**

**Violation of the Freedom of Information Act for Plaintiff's January 15, 2020 Request to the Executive Office for United States Attorneys**

68.     Plaintiff repeats and realleges paragraphs 1-47.

1    69.    Plaintiff properly requested the records described in the January 15, 2020

2    FOIA request to the EOUSA in compliance with the requirements of 5 U.S.C. § 552 and the

3    applicable internal regulations, 28 C.F.R. § 16.3.

4    70.    The records requested by Plaintiff are under the custody and/or control of the

5    EOUSA.

6    71.    The EOUSA did not respond to Plaintiff's January 15, 2020 FOIA request

7    within the statutory time limit set forth in 5 U.S.C. § 552(a)(6)(A)(i).  The EOUSA's failure

8    to respond amounted to a constructive denial of Plaintiff's January 15, 2020 FOIA request.

9    5 U.S.C. § 552(a)(6)(C)(i).

10    72.    Plaintiff timely appealed the EOUSA's constructive denial of Plaintiff's

11    January 15, 2020 FOIA request on February 21, 2020.  The EOUSA dismissed Plaintiff's

12    appeal on March 27, 2020 because the EOUSA had not made a final determination on

13    Plaintiff's FOIA request.

14    73.    Plaintiff has met the exhaustion requirement because (1) Plaintiff filed a

15    lawsuit after the EOUSA failed to respond to his FOIA request within the time limit set forth

16    in 5 U.S.C. § 552(a)(6)(A)(i) and (2) Plaintiff attempted to timely appeal the EOUSA's

17    constructive denial of Plaintiff's January 15, 2020 FOIA request, which the EOUSA

18    dismissed on March 27, 2020, citing the fact that the EOUSA had not made a final

19    determination on Plaintiff's FOIA request.

20    74.    The EOUSA has wrongfully withheld agency records requested by Plaintiff

21    and has failed to comply with the statutory time limit for processing Plaintiff's January 15,

22    2020 FOIA request.

23    75.    The EOUSA's wrongful withholding of the records sought by Plaintiff's

24    January 15, 2020 FOIA request violates the FOIA, 5 U.S.C. § 552(a)(3)(A).

25    76.    Plaintiff is entitled to injunctive relief with respect to the release and disclosure

26    of the requested documents under 5 U.S.C. § 552(a)(4)(B) because the EOUSA continues to

27    improperly withhold and/or delay the production of agency records in violation of FOIA.

28

77.     Plaintiff will suffer irreparable injury from and have no adequate legal remedy for the EOUSA's illegal withholding of government documents pertaining to the FBI's participation in the campaigns to threaten, intimidate, and silence critics of a public company through violations of individual constitutional rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Marc Cohodes respectfully prays for relief as follows:

A.      Declare that the defendants' failure to disclose the records requested by the plaintiff is unlawful;

B.      Order the defendants to immediately conduct a thorough search for the requested information;

C.      Order the defendants to process expeditiously the requested records in their entirety;

D.      Order the defendants, upon completion of such processing, to disclose the requested records in their entirety and make them available to the plaintiff;

E.      Provide for expeditious proceedings in this action;

F.      Enter a preliminary and permanent injunction against the defendants order the relief requested herein;

G.      Award to the plaintiffs their litigation costs and reasonable attorneys' fees incurred in this action; and

H.      Grant such other relief as the Court may deem just and proper.

Dated:  April 13, 2020                                          THE NORTON LAW FIRM P.C.

By: _____
                                                David W. Shapiro
                                                Fred Norton
                                                Matthew W. Turetzky

                                                Attorneys for Plaintiff
                                                MARC COHODES

# EXHIBIT 1



January 15, 2020

**<u>VIA E-MAIL</u>**

FOIA/PA Mail Referral Unit
United States Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001
Phone: (202) 616-3837
E-mail: MRUFOIA.Requests@usdoj.gov

Re:     <u>Freedom of Information Act Request to the Department of Justice</u>

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I formally request that you provide me with copies of:

1.  All correspondence and communications between Senator Johnny Isakson, his staff, his employees, or any person acting on his behalf and the United States Department of Justice referring or relating to MiMedx, Parker Petit, or Marc Cohodes.
2.  All documents and communications in the possession, custody, or control of the United States Department of Justice referring or relating to Marc Cohodes.

Please provide the information in an electronic format, if possible.  I agree to pay reasonable duplication fees from the processing of this request.  Should such fees exceed $1,500.00, please contact me to confirm that I will pay fees in excess of that amount.

If my request is denied in whole or part, please justify all denials with reference to specific exemptions in the Act.  I expect that you will release all segregable portions of otherwise exempt material.

Marc Cohodes has authorized the release to me of all information that relates or refers to him.  Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing the disclosure of information about him to me.

(continued on next page)

Department of Justice
January 15, 2020
Page 2

My contact information is as follows:

Matthew W. Turetzky
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, California 94607
mturetzky@nortonlaw.com
Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

Enclosure

**U.S Department of Justice**

# Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC  20503.

Full Name of Requester [1]   Marc Cohodes

Citizenship Status [2]   U.S. Citizen          Social Security Number [3]

Current Address

Date of Birth          Place of Birth

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

### Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4]**                      **Date**   1/13/2020

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

# EXHIBIT 2



January 15, 2020

**<u>VIA ONLINE SUBMISSION</u>**

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
170 Marcel Drive
Winchester, VA 22602-4843

Re:     <u>Freedom of Information Act Request to the Federal Bureau of Investigation</u>

Dear Mr. Hardy:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I formally request that you provide me with copies of:

1.  All correspondence and communications between Senator Johnny Isakson, his staff, his employees, or any person acting on his behalf and the Federal Bureau of Investigation referring or relating to MiMedx, Parker Petit, or Marc Cohodes.
2.  All documents and communications in the possession, custody, or control of the Federal Bureau of Investigation referring or relating to Marc Cohodes.

Please provide the information in an electronic format, if possible.  I agree to pay reasonable duplication fees from the processing of this request.  Should such fees exceed $1,500.00, please contact me to confirm that I will pay fees in excess of that amount.

If my request is denied in whole or part, please justify all denials with reference to specific exemptions in the Act.  I expect that you will release all segregable portions of otherwise exempt material.

Marc Cohodes has authorized the release to me of all information that relates or refers to him. Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing the disclosure of information about him to me.

(continued on next page)

299 Third Street, Suite 106, Oakland, California 94607

Federal Bureau of Investigation
January 15, 2020
Page 2

My contact information is as follows:

Matthew W. Turetzky
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, California 94607
mturetzky@nortonlaw.com
Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

Enclosure

**U.S Department of Justice**

## Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]   Marc Cohodes

Citizenship Status [2]   U.S. Citizen        Social Security Number [3] ███████████

Current Address ████████████████████████████████████████████

Date of Birth ██████████    Place of Birth ██████████████████

## OPTIONAL:  Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

### Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [4] _____    **Date** __1/13/2020__

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

FORM DOJ-361

# EXHIBIT 3



January 15, 2020

<u>**VIA ONLINE SUBMISSION**</u>

Kevin Krebs
Assistant Director
FOIA/Privacy Unit
Executive Office for United States Attorneys
Department of Justice
175 N Street, N.E.
Suite 5.400
Washington, DC 20530-0001

Re:     <u>Freedom of Information Act Request to the Executive Office for United States Attorneys</u>

Dear Mr. Krebs:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I formally request that you provide me with copies of:

1. All correspondence and communications between Senator Johnny Isakson, his staff, his employees, or any person acting on his behalf and the United States Attorney's Office for the Southern District of New York referring or relating to MiMedx, Parker Petit, or Marc Cohodes.
2. All documents and communications in the possession, custody, or control of the United States Attorney's Office for the Southern District of New York referring or relating to Marc Cohodes.

Please provide the information in an electronic format, if possible.  I agree to pay reasonable duplication fees from the processing of this request.  Should such fees exceed $1,500.00, please contact me to confirm that I will pay fees in excess of that amount.

If my request is denied in whole or part, please justify all denials with reference to specific exemptions in the Act.  I expect that you will release all segregable portions of otherwise exempt material.

Marc Cohodes has authorized the release to me of all information that relates or refers to him. Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing the disclosure of information about him to me.

(continued on next page)

Department of Justice
January 15, 2020
Page 2

My contact information is as follows:

Matthew W. Turetzky
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, California 94607
mturetzky@nortonlaw.com
Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

Enclosure

**U.S Department of Justice**

## Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]   Marc Cohodes

Citizenship Status [2]   U.S. Citizen          Social Security Number [3]   ████████

Current Address   ████████

Date of Birth   ████████          Place of Birth   ████████

## OPTIONAL:  Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

### Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4]**   _____          **Date**   1/13/2020

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

FORM DOJ-361

# EXHIBIT 4



February 21, 2020

**BY ONLINE SUBMISSION (FOIA STAR)**

U.S. Department of Justice
Office of Information Policy (OIP)
441 G Street NW, Sixth Floor
Washington, D.C. 20001
DOJ.OIP.FOIA@usdoj.gov

> *Re:*   *Freedom of Information Act Appeal of the DOJ, FBI, and EOUSA's*
> *Constructive Denial of Freedom of Information Act Request Nos.*
> *EMRUFOIA011520-3 (DOJ), 1457448-000 (FBI), and EOUSA-2020-*
> *001161 (EOUSA) submitted by Matthew Turetzky on January 15, 2020*

To Whom It May Concern,

I hereby appeal the constructive denials by the Department of Justice, the Federal Bureau of Investigation, and the Executive Office of United States Attorneys of the Freedom of Information Act (FOIA) Requests Nos.  EMRUFOIA011520-3 (DOJ), 1457448-000 (FBI), and EOUSA-2020-001161 (EOUSA).

I submitted these FOIA requests on January 15, 2020.  The requests sought "all correspondence and communications between Senator Jonny Isakson, his staff, his employees, or any person acting on his behalf and the [DOJ, FBI, and the U.S. Attorney's Office (USAO) in the Southern District of New York (SDNY)] referring or relating to MiMedx, Parker Petit, or Marc Cohodes" and "all documents and communications in the possession, custody, or control of the [DOJ, FBI, and the USAO SDNY] referring or relating to Marc Cohodes."  The requests included a signed privacy release by Mr. Cohodes on form DOJ-361 and my agreement to pay reasonable duplication fees not to exceed $1,500 per request.

The FOIA requires agencies, such as the DOJ, FBI, and the EOUSA to respond within 20 working days of receiving a request.  5 U.S.C. § 552(a)(6)(A)(i).  Here, the agencies have not responded within the 20 working-day deadline.  The FOIA treats such failures to respond as constructive denials.  5 U.S.C. § 552(a)(6)(C)(i).

February 21, 2020
Office of Information Policy
Page 2

I therefore appeal your denials of my FOIA requests and further request that you respond to this appeal within 20 working-days as required by statute. 5 U.S.C 552(a)(6)(A)(ii).

If you have any questions about this administrative appeal, please contact me by email at mturetzky@nortonlaw.com or telephone at 510-906-4905.

Sincerely,

Matthew W. Turetzky

Enclosures (FOIA Request and Mr. Cohodes Signed Form DOJ 361 (Privacy Release))

EXHIBIT 5



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

February 28, 2020

MR. MATTHEW W TURETZKY
THE NORTON LAW FIRM PC
SUITE 106
299 THIRD STREET
OAKLAND, CA 94607

FOIPA Request No.: 1457448-000
Subject: MiMedx (Correspondence between
FBI and Senator Johnny Isakson)

Dear Mr. Turetzky:

The enclosed 10 pages of records were determined to be responsive to your subject and were previously processed and released pursuant to the Freedom of Information Act (FOIA).   Please see the selected paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☑       In an effort to provide you with responsive records as expeditiously as possible, we are releasing documents from previous requests regarding your subject. We consider your request fulfilled.  Since we relied on previous results, additional records potentially responsive to your subject may exist. If this release of previously processed material does not satisfy your request, you may request an additional search for records.  Submit your request by mail or fax to – Work Process Unit, 170 Marcel Drive, Winchester, VA  22602, fax number (540) 868-4997. Please cite the FOIPA Request Number in your correspondence.

☐       Please be advised that additional records responsive to your subject exist. If this release of previously processed material does not satisfy your request, you must advise us that you want the additional records processed.  Please submit your response within thirty (30) days by mail or fax to—Work Processing Unit, 170 Marcel Drive, Winchester, VA  22602, fax number (540) 868-4997.  Please cite the FOIPA Request Number in your correspondence. **If we do not receive your decision within thirty (30) days of the date of this notification, your request will be closed.**

☐       One or more of the enclosed records were transferred to the National Archives and Records Administration (NARA).  Although we retained a version of the records previously processed pursuant to the FOIA, the original records are no longer in our possession.

        If this release of the previously processed material does not satisfy your request, you may file a FOIPA request with NARA at the following address:

                National Archives and Records Administration
                Special Access and FOIA
                8601 Adelphi Road, Room 5500
                College Park, MD 20740-6001

☐       Records potentially responsive to your request were transferred to the National Archives and Records Administration (NARA), and they were not previously processed pursuant to the FOIA.  You may file a request with NARA using the address above.

☐    One or more of the enclosed records were destroyed.  Although we retained a version of the records previously processed pursuant to the FOIA, the original records are no longer in our possession.  Record retention and disposal is carried out under supervision of the National Archives and Records Administration (NARA) , Title 44, United States Code, Section 3301 as implemented by Title 36, Code of Federal Regulations, Part 1228; Title 44, United States Code, Section 3310 as implemented by Title 36, Code of Federal Regulations, Part 1229.10.

☐    Records potentially responsive to your request were destroyed.  Since this material could not be reviewed, it is not known if it was responsive to your request.  Record retention and disposal is carried out under supervision of the National Archives and Records Administration (NARA)  according to Title 44 United States Code Section 3301, Title 36 Code of Federal Regulations (CFR) Chapter 12 Sub-chapter B Part 1228, and 36 CFR 1229.10.

☐    Documents or information referred to other Government agencies were not included in this release.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.  **"Part 1"** of the Addendum includes standard responses that apply to all requests.  **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals.  **"Part 3"** includes general information about FBI records that you may find useful.  Also enclosed is our Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request Number listed above has been assigned to your request.  Please use this number in all correspondence concerning your request.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."  Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.  Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.  If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."  Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
 Dissemination Section
Information Management Division

Enclosure(s)

**FBI FOIPA Addendum**

**As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request.  Part 1 of the Addendum includes standard responses that apply to all requests.  Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information.  Part 3 includes general information about FBI records, searches, and programs.**

**Part 1: The standard responses below apply to all requests:**

(i) **5 U.S.C. § 552(c).**  Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)].  FBI responses are limited to those records subject to the requirements of the FOIPA.  Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii) **Intelligence Records**.  To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)].  The mere acknowledgement of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].  This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i) **Requests for Records about any Individual—Watch Lists.**  The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].  This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii) **Requests for Records about any Individual—Witness Security Program Records.**  The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)].  This is a standard response and should not be read to indicate that such records do or do not exist.

(iii) **Requests for Records for Incarcerated Individuals.**  The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].  This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i) **Record Searches.**  The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found.  A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions.  The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS.  Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files.  For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii) **FBI Records.**  Founded in 1908, the FBI carries out a dual law enforcement and national security mission.  As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii) **Requests for Criminal History Records or Rap Sheets.**  The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet.  These criminal history records are not the same as material in an investigative "FBI file."  An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.  For a fee, individuals can request a copy of their Identity History Summary Check.  Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.  Additionally, requests can be submitted electronically at www.edo.cjis.gov.  For additional information, please contact CJIS directly at (304) 625-5590.

(iv) **National Name Check Program (NNCP).**  The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.  Please be advised that this is a service provided to other federal agencies.  Private Citizens cannot request a name check.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

# EXHIBIT 6

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1457448-0


Total Deleted Page(s) = 33
Page 4 ~ b6; b7C; b7E;
Page 5 ~ b6; b7C; b7E;
Page 6 ~ b6; b7C; b7E;
Page 7 ~ b6; b7C; b7E;
Page 8 ~ b6; b7C; b7E;
Page 9 ~ b6; b7C; b7E;
Page 10 ~ b6; b7C; b7E;
Page 11 ~ b6; b7C; b7E;
Page 12 ~ b6; b7C; b7E;
Page 13 ~ b6; b7C; b7E;
Page 14 ~ b6; b7C; b7E;
Page 15 ~ b6; b7C; b7E;
Page 18 ~ Duplicate;
Page 19 ~ Duplicate;
Page 20 ~ Duplicate;
Page 21 ~ Duplicate;
Page 26 ~ Duplicate;
Page 27 ~ Duplicate;
Page 30 ~ Duplicate;
Page 31 ~ Duplicate;
Page 32 ~ Duplicate;
Page 33 ~ Duplicate;
Page 34 ~ Duplicate;
Page 35 ~ Duplicate;
Page 36 ~ Duplicate;
Page 37 ~ Duplicate;
Page 38 ~ Duplicate;
Page 39 ~ Duplicate;
Page 40 ~ Duplicate;
Page 41 ~ Duplicate;
Page 42 ~ Duplicate;
Page 43 ~ Duplicate;
Page 44 ~ Duplicate;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)   X
X   No Duplication Fee X
X   For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1405921-0

Total Deleted Page(s) = 33
Page 4 ~ b6; b7C; b7E;
Page 5 ~ b6; b7C; b7E;
Page 6 ~ b6; b7C; b7E;
Page 7 ~ b6; b7C; b7E;
Page 8 ~ b6; b7C; b7E;
Page 9 ~ b6; b7C; b7E;
Page 10 ~ b6; b7C; b7E;
Page 11 ~ b6; b7C; b7E;
Page 12 ~ b6; b7C; b7E;
Page 13 ~ b6; b7C; b7E;
Page 14 ~ b6; b7C; b7E;
Page 15 ~ b6; b7C; b7E;
Page 18 ~ Duplicate;
Page 19 ~ Duplicate;
Page 20 ~ Duplicate;
Page 21 ~ Duplicate;
Page 26 ~ Duplicate;
Page 27 ~ Duplicate;
Page 30 ~ Duplicate;
Page 31 ~ Duplicate;
Page 32 ~ Duplicate;
Page 33 ~ Duplicate;
Page 34 ~ Duplicate;
Page 35 ~ Duplicate;
Page 36 ~ Duplicate;
Page 37 ~ Duplicate;
Page 38 ~ Duplicate;
Page 39 ~ Duplicate;
Page 40 ~ Duplicate;
Page 41 ~ Duplicate;
Page 42 ~ Duplicate;
Page 43 ~ Duplicate;
Page 44 ~ Duplicate;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee X
X   For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```



# JOHNNY ISAKSON
## UNITED STATES SENATOR · GEORGIA

## Fax Cover Sheet

One Overton Park
3625 Cumberland Boulevard
Suite 970
Atlanta, Georgia 30339
770-661-0999
770-661-0768 (Fax)

**To:** Congressional  **From:** [ ]  b6 b7C b7E

**Fax:** 202-324-6490  **Pages:** [ ] including cover

**Date:** 11/20/17

**Subject:** [ ]  b6 b7C

**Comments:**

[ ] in touch with our office regarding assistance in reaching

out to the FBI [ ]  b7E

[ ] We

appreciate all appropriate action in accordance with established policies and procedures.

I can be reached at [ ] with any questions.  b6 b7C

JOHNNY ISAKSON
GEORGIA

http://isakson.senate.gov

131 RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510
(202) 224-3643

ONE OVERTON PARK
3625 CUMBERLAND BOULEVARD, SUITE 970
ATLANTA, GA 30339
(770) 661-0999

# United States Senate

WASHINGTON, DC 20510

VETERANS' AFFAIRS
CHAIRMAN

SELECT COMMITTEE ON ETHICS
CHAIRMAN

FINANCE

HEALTH, EDUCATION,
LABOR, AND PENSIONS
SUBCOMMITTEE ON
EMPLOYMENT AND WORKPLACE
SAFETY, CHAIRMAN

FOREIGN RELATIONS
SUBCOMMITTEE ON
STATE DEPARTMENT AND USAID
MANAGEMENT, INTERNATIONAL OPERATIONS,
AND BILATERAL INTERNATIONAL
DEVELOPMENT, CHAIRMAN

November 20, 2017

Mr. Gregory Brower
Assistant Director of Congressional Affairs
Federal Bureau of Investigation
U.S. Department of Justice
935 Pennsylvania Avenue, Nw, Room 7240
Washington, D.C. 20535

RE

b6
b7C

Dear Mr. Brower:

Please find enclosed correspondence I received from the above-referenced constituent. I would appreciate your review of this information in accordance with established policies and procedures. Upon completion of your review, please forward clarification of your findings to the address below.

In the event my office may be of further assistance, please do not hesitate to contact [        ] at [        ] Thank you for your efforts in this matter, and I look forward to hearing from you soon.

b6
b7C

Sincerely,

Johnny Isakson
United States Senate

Enclosure (s)
One Overton Park, Suite 970
3625 Cumberland Blvd
Atlanta, GA 30339
ATTN:

b6
b7C

☐ (Isakson)                                                                                    b6
                                                                                                b7C

**Subject:**                    FW: FBI


**From:** ☐ [mailto ☐ ]                                                                        b6
**Sent:** Friday, November 17, 2017 3:52 PM                                                     b7C
**To:** ☐ (Isakson) ☐
**Subject:** RE: FBI

                                                                                                b6
                                                                                                b7C
                                                                                                b7E

As a result, we made contact with ☐ who put us in touch with Agent ☐ We spoke to Agent ☐ over
the phone ☐ The next day, we provided Agent ☐                                                   b6
information, including ☐                                                                         b7C
☐ We will be happy to ☐ provide it to you.  Although Agent ☐                                    b7E
☐

We spoke again with Agent ☐ but have not heard from him since this last contact. ☐
                                                                                                b6
                                                                                                b7C
                                                                                                b7E

Thanks,

☐                                                                                               b6
                                                                                                b7C

1



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

The Honorable Johnny Isakson
United States Senator
Suite 970
One Overton Park
3625 Cumberland Boulevard
Atlanta, GA 30339

JAN 2 5 2018

Dear Senator Isakson:

I am writing in response to your November 20, 2017 letter to the FBI on behalf of your
constituent [                                                                    ]      b6
                                                                                        b7C

In order to protect the integrity of all investigations, the FBI does not generally comment
on the status or existence of any potential investigative matter. Please be assured this matter has
been brought to the attention of the appropriate personnel for any action deemed necessary.

I appreciate your bringing this matter to our attention, and I hope this information will be
helpful to you in responding to [                          ]                             b6
                                                                                        b7C

Sincerely,

J.C. Hacker
Deputy Assistant Director
Criminal Investigative Division

_____ **(DO) (FBI)**                                          b6
                                                                            b7C

From:            _____(DO) (FBI)
Sent:            Monday, October 16, 2017 8:58 AM                            b6
To:              _____(AT) (FBI)                                          b7C
Subject:         RE: Victim Referral

_____                                                             b6
                                                                            b7C
I got a message Sunday evening from an attorney representing _____ In the voicemail the attorney    b7E
said_____ I haven't called him back yet, but I apologize for sending this your way ____
_____ The Senator gave me the understanding _____ When you have a
chance could you give me a quick call.  Thanks_____

SSA_____
Office of Congressional Affairs, FBI                                        b6
Desk_____                                                           b7C
Cell_____

-----Original Message-----
From_____(DO) (FBI)
Sent: Friday, October 13, 2017 4:35 PM                                      b6
To_____(AT) (FBI)_____                                         b7C
Cc:_____(DO) (FBI)_____
Subject: RE: Victim Referral

_____                                                             b6
                                                                            b7C
I spoke with_____and gave___your number._____

-----Original Message-----
From_____(DO) (FBI)
Sent: Friday, October 13, 2017 4:12 PM                                      b6
To_____(AT) (FBI)_____                                         b7C
Cc:_____(DO) (FBI)_____
Subject: Victim Referral

_____                                                             b6
        As we discussed over the phone, I recently received a call from Senator Johnny Isakson, who informed me that a    b7C
_____    b7E
_____

        Although I ordinarily offer the complaint hotline number to constituents seeking to file a complaint._____    b6
_____    b7C
_____    b7E
_____

b6
b7C
b7E

Let me know which makes more sense.  If you have any questions or issues please let me know.

SSA
Office of Congressional Affairs, FBI
Desk:
Cell:

b6
b7C

████████████████ **(DO) (FBI)**                                                b6
                                                                               b7C

**From:** ████████████ (Isakson) █████████████████████
**Sent:** Monday, October 16, 2017 11:49 AM                                    b6
**To:** █████████████ (DO) (FBI)                                               b7C
**Subject:** RE: Senator Isakson of Georgia

Thank you so much ████████████
Really appreciate your fast help on a Friday.
Call on us if we can ever help you.
Best                                                                           b6
████████████                                                                   b7C

████████████████████

**OFFICE OF UNITED STATES SENATOR JOHNNY ISAKSON**
*DC phone:* 202.224.3643
*Atlanta phone:* 770.661.0999
*email:* ████████████████████

Visit Johnny's website to learn more about his work in the Senate and to sign up for his newsletter.


**From:** ████████████ (DO) (FBI) [mailto ████████████
**Sent:** Monday, October 16, 2017 9:13 AM                                     b6
**To:** ████████████ (Isakson) ████████████████                               b7C
**Subject:** RE: Senator Isakson of Georgia

████████████████

Thank you for setting this call up.  I was able to speak with the Senator Friday afternoon ████████████   b6
████████████████████████████████████████████████████████████████████████   b7C
████████████████████████████████████████████████████████                     b7E
██████████████████████████████ Please thank the Senator for taking the time to call and refer this matter to
us and please don't hesitate to reach out if there is anything else I can assist you with from a Congressional Affairs
standpoint.  And have a great week! ████████████

SSA ████████████████████
Office of Congressional Affairs, FBI
Desk ████████████                                                              b6
Cell ████████████                                                              b7C


**From:** ████████████ (Isakson) [mailto ████████████████████                  b6
**Sent:** Friday, October 13, 2017 2:31 PM                                     b7C

**To:** [redacted] (DO) (FBI) [redacted]

**Subject:** Senator Isakson of Georgia

b6
b7C
b7E

Hey [redacted] - just left you a voice mail on your [redacted] line, but I wanted to also send you a note.
[redacted] Senator Isakson, likely will be calling you between 3:30pm and 4pm today to pass along some information from
[redacted]
If you need to reach me, my cell is [redacted]
Thank you
[redacted]

[redacted]

**OFFICE OF UNITED STATES SENATOR JOHNNY ISAKSON**
*DC phone:* 202.224.3643
*Atlanta phone:* 770.661.0999
*email:* [redacted]

b6
b7C

Visit Johnny's website to learn more about his work in the Senate and to sign up for his newsletter.

**(DO) (FBI)**

b6
b7C

| | |
|---|---|
| **From:** | (DO) (FBI) |
| **Sent:** | Thursday, November 02, 2017 10:20 AM |
| **To:** | (AT) (FBI) |
| **Cc:** | (DO) (FBI) |
| **Subject:** | FW: |
| **Attachments:** | |

b6
b7C
b7E

I just spoke with [redacted] and basically informed him that it was no longer necessary to involve me in his communications with you and your office.  Please call me if youd like to discuss this matter further, or if there is anything i can do to help you from a Congressional Affairs standpoint.

b6
b7C

SSA
FBI Congressional Affairs
Desk:
Cell

b6
b7C

---

**From:** [redacted] [mailto [redacted]
**Sent:** Wednesday, November 01, 2017 7:47 PM
**To:** (AT) (FBI) [redacted] (DO) (FBI)
**Cc:**
**Subject:** FW:

b6
b7C
b7E

Agents

We left messages with both of you today regarding [redacted] have not heard from you.

b6
b7C
b7E

Please contact me as soon as possible to let us know the status of this matter.   My cell is [redacted] and my work number is

b6
b7C

---

**From:**
**Sent:** Wednesday, November 01, 2017 12:11 PM
**To:**
**Cc:**
**Subject:**

b6
b7C
b7E

Agent

1

b6
b7C
b7E

b6
b7C

The information in this message is intended for the addressee only and may contain privileged and confidential information.  If you are not the intended recipient, please immediately stop reading this message, delete it from your system and notify the sender at [                    ] that it has been deleted.  Any unauthorized reading, distribution, dissemination, copying, or other use of the information in this message is strictly prohibited.

b6
b7C

EXHIBIT 7

## BACKGROUND OF THE INVESTIGATION
### November 15, 2019

In 2017, MiMedx Group was highlighted as the fifth fastest growing public company in America by Fortune magazine.  This growth had taken place over the previous eight years as the Company grew from near bankruptcy to approximately 1,000 employees under the leadership of a very experienced serial healthcare entrepreneur, Parker H. "Pete" Petit and a group of executives that had worked with "Pete" at his previously successful companies.  The business and philanthropic history of Mr. Petit is available at www.petepetit.com.

MiMedx developed a very clinically effective and cost-effective product line for the healing of wounds, such as diabetic foot ulcers and venous leg ulcers, and for use with certain surgical procedures.  The Company's product lines were protected by over 106 issued patents and 120 pending patents.  The Company was conducting approximately 30 different clinical studies at notable research facilities across the country and in certain foreign countries.

The Company's financial performance had been stellar, as it had managed to meet or exceed all of its quarterly revenue estimates that had been provided to shareholders for 29 out of 30 quarters.  In addition, its cash flows had been very strong because it was able to repurchase over $130 million of its common stock.  MiMedx provided shareholders revenue guidance of $325 million for calendar year 2017 and over $400 million for calendar year 2018.  By August of 2017, the Company's market capitalization had climbed to approximately $2 billion, which was certainly reasonable considering the MiMedx revenues, their profitability and their growth rates.

In the fall of 2017, MiMedx was about to experience numerous events, most of which were beyond their control, that would cause significant problems, including reducing the market capitalization from approximately $2 billion to around $100 million.  Briefly, these events began during 2016 with a few of their over 400 sales personnel selling competitive products "on the side" while they were full-time MiMedx employees.  A few of those individuals were terminated for cause and lawsuits were filed against them.  They responded by countersuing with charges that channel stuffing and other financial irregularities were occurring at the Company.  Their attorney demanded a $14 million extortion payment from the Company, which was denied.  Unfortunately, illegal short sellers connected with these terminated individuals in the ensuing months, and a bizarre and destructive series of events followed.

In September of 2017, Marc Cohodes, a notorious short seller, began a concerted and focused attack on MiMedx.  He began his attack verbally at a meeting, and then continued with the publication of fraudulent documents, lies and innuendo, most of which followed the allegations of the terminated sales employees.  The Company

easily refuted the Cohodes' allegations with facts that were placed on their website. Cohodes' initial attacks pushed the Company's stock from approximately $18 a share down to $12 during the fall of 2017.  The Company's stock moved back to $18 in late January 2018, as the Company's documents that refuted the Cohodes allegations were published on their website.

MiMedx had utilized Cherry Bekaert, a well-respected large regional accounting firm, as their auditors since 2010.  In the spring of 2017, the Audit Committee decided that the Company should retain one of the big four auditors.  The Audit Committee Chairman, Terry Dewberry, instructed Pete Petit to interview the big four auditors and come back with a recommendation to the Audit Committee.  Mr. Petit came back with a recommendation to utilize Ernst & Young (E&Y) for numerous reasons.  However, he recommended not starting E&Y until after the close out of the 2017 fiscal year.  The Audit Committee disagreed, and they wanted the new auditors to begin with a review of the third quarter of 2017.  Thus, E&Y began their due diligence during the spring of 2017, and they subsequently told the Board they were excited about becoming MiMedx auditors.  E&Y completed the third quarter review of 2017 with accolades to the Board of Directors about the Company's performance and records.

During the fall of 2017, Marc Cohodes continued to publish allegations and lies about the Company in social media and through some of his paid journalistic shills. His group also started writing letters to senators and congressmen making allegations.  He published a fraudulent email from a so-called "MiMedx employee" and sent it to numerous law firms, news outlets and competitors.  This group created a false email address for Petit and sent messages to a very respected Wall Street analyst who was covering the Company.

After witnessing this bizarre behavior, in November Mr. Petit told Andy Brock, the Ernst & Young managing partner, that Marc Cohodes was like no other short seller that he had ever encountered.  Petit stated that he expected Cohodes to write E&Y a threatening letter in the near future.  Mr. Brock retorted, "Ernst & Young is used to this kind of stuff."  Petit emphasized again that he thought Brock should work with the Company's Audit Committee Chairman, Terry Dewberry, and confer with his New York partners to decide what would happen if Cohodes wrote such a letter. Apparently, that conference never took place.

Cohodes is an individual who his friends say is mentally ill.  He threatened Mr. Petit's life on his Twitter account.  That resulted in the FBI visiting his house.  He has been recently charged with assault and battery in a restaurant in San Francisco. Cohodes has even filed an action against Senator Johnny Isaakson, who is Chairman of the Senate's Ethics Committee, for violations relative to MiMedx because he assisted the Company with resolving a matter with the Veteran's Administration. The result was that the VA sent the Company an apology letter.  Senator Isaakson's honesty and integrity are impeccable, but that did not keep Cohodes from making ridiculous accusations.

2

In February 2018, just weeks before the 2017 audit was to be completed, Marc Cohodes did write a very long letter threatening Ernst & Young. E&Y advised the MiMedx Board that they would <u>not</u> complete the 2017 audit that was due at the end of February until the Company thoroughly investigated all the Cohodes allegations. From that point forward, MiMedx's future was negatively altered <u>very</u> <u>significantly</u>.

At that February meeting, Andy Brock also told the Board that he did not believe the Audit Committee did a satisfactory investigation of the allegations in early 2017 because there was not an expensive forensic audit. However, he and other Ernst & Young staff reviewed that investigation report written by the Troutman Sanders law firm during their due diligence of the Company in the summer of 2017, and they had no concerns until they were threatened by Marc Cohodes. That E&Y comment put the Audit Committee Chairman in a <u>state</u> <u>of</u> <u>paranoia</u>. Instead of simply disagreeing with Andy Brock, the Audit Committee Chair, Terry Dewberry, started down a path of protecting himself and doing Brock's bidding. He finally convinced the majority of the Board to stay with E&Y and do the investigation requested by E&Y.

Mr. Petit advised the Board that he was very frustrated by the Ernst & Young refusal to complete the 2017 audit due to the Cohodes' allegations because he had warned Andy Brock in November that Cohodes would write E&Y a letter of that nature. Nothing was done to prepare for the eventuality. Petit also told the Board that he firmly believed that E&Y would <u>never</u> <u>finish</u> <u>the</u> <u>audit</u> because, once the current allegations were investigated, Cohodes would have even more allegations that E&Y would want to investigate. As Petit predicted, E&Y stayed involved only until November 7, 2018, and then resigned. At that point, they had probably billed the Company five times the original estimate for the audit without completing it.

As the allegations from Marc Cohodes increased during the fall of 2017, Mr. Petit received phone calls from some other public company executives and others who had experienced Cohodes' attacks in the past. One of these individual orchestrated a meeting at the DOJ offices in New York City with Petit, Bill Taylor, the Company's Chief Operating Officer, and Lexi Haden, the Company's General Counsel, with two agents, and a DOJ criminal investigator. This meeting took place in January 2018.

The DOJ staff disclosed that they knew a great deal about Marc Cohodes. They indicated they were collaborating with Canadian and European authorities, and they were pursuing a number of his illegal and fraudulent activities. MiMedx was asked to forward to the agents all fraudulent activities that Marc Cohodes was conducting against the Company. The staff stated that they did <u>not</u> know when the Cohodes investigation would be completed and action taken.

Mr. Petit retained Washington counsel to assist the Company with other contacts with federal agencies relative to these illegal short selling activities. Mr. Petit had this counsel draft a very lengthy letter with supporting documents to Mr. Jay Clayton, the SEC Commissioner, on January 3, 2018, which clearly described Mr.

Cohodes' "short and distort" campaign and his related illegal short selling that was occurring against MiMedx. These documents clearly showed the standard pattern of creating false allegations in some media format and front running the publication date by hedge funds and involved individuals setting up their trades. On the publication date, these funds all participate in trading with market manipulation, such as "spoofing" and "layering." This is a standard process for illegal short selling. In addition, many of these traders create "naked" or "counterfeit" shares by taking extended periods of time to close out their short contract or position. Those contract/positions are supposed to be closed within three days; however, MiMedx had averaged short contracts on their shares out as far as 40 days without closure.

The Company notified FINRA with supporting documents of these and other trading abnormalities, such as "naked" or "counterfeit" shorting. The Company never received responses from either the SEC or FINRA relative to their letters and inquiries prior to Mr. Petit's departure. In addition, numerous MiMedx shareholders formally contacted the SEC and disclosed these illegal short selling activities with no responses as far as Petit knows.

At the February meeting, Mr. Petit's recommendation to the Board was to terminate Ernst & Young and bring Cherry Bekaert back to complete the 2017 audit, since they had already reviewed the first two of those quarters. The Company could then retain another big four auditor for 2018. Any additional investigations that the Board felt required to accomplish could be completed during 2018. Mr. Dewberry disagreed because he claimed this approach would "look bad." Mr. Petit replied that his approach would look bad for 60 days while the audit was completed, but then it would be over. He stated that Mr. Dewberry's solution with E&Y had no closure date because Cohodes would continue to make allegations.

As things progressed, Mr. Petit was absolutely correct. As of today, the Company has stated that they should have audited financial statements in December, which is almost two years from the original due date for the 2017 audit.

With the continuing DOJ investigation, Petit, Taylor and Senken now face the fact that the Audit Committee paid King & Spalding, a large national law firm, $40 million to conduct the investigation. The investigation lasted 15 months. In addition, the Company probably spent another $30 million on Sidley Austin and other attorneys and auditors.

Those expenditures were absolutely ridiculous for a company of the size of MiMedx, but were allowed in order to exploit the Audit Committee's CYA syndrome and the "takeover" of MiMedx by the inexperienced Board. Of course, this approach followed the Sally Yates Doctrine, which was published by DOJ in 2015. Yates was fired by President Trump in 2017, and she returned to King & Spalding, her previous law firm.

In addition to the KPMG opinion on the AvKare contract and the proposed revenue restatement to a cash versus accrual basis, the investigation turned up several distributor transactions in 2015 that King & Spalding has brought into question. The King & Spalding investigation was headed by a career prosecutor, who had no practical business experience.  These transactions that have been highlighted as problematic were nothing more than normal distributor negotiations.  There was one situation, with a distributor by the name of CPM in Dallas, Texas, where the Company had actually fired the distributor once, and the distributor asked to be reinstated.  In those negotiations, the Company reinstituted a consulting contract that had been lost when the distributor was fired.  As it turned out, Petit had some concerns about the business practices of this distributor, and he ended up firing him for the second time within about three months.  All of these issues should not have affected the Company's accounting treatment of these accounts in 2015.

Over the Petit/Taylor years, the Company basically collected in cash all of their approximately $1 billion in reported revenue.  The Company's accounts receivables never got out of a reasonable range without executives taking action to bring it quickly back into range.  When Petit and Taylor left the Company on June 30, 2018, the accounts receivable were in the 65 day range, which is excellent for most healthcare organizations.

The Audit Committee consisting of Dewberry, Evans and Bleser, actually orchestrated a takeover of the Company by using the chaos created by the illegal short selling activities.  There were two motivations for this takeover action.  First, Mr. Dewberry was attempting to find a way to cover the Audit Committee for the "opinion" of Ernst & Young that they had not conducted a sufficient investigation of the terminated sales employees' accusations in early 2017.  Dewberry was paranoid on this issue.  Subsequently, Mr. Evans, who was unemployed at the time, saw an opportunity to become the Chairman of the Board of this Company, which was going to be a very prestigious position for him.  Mr. Evans had never served on a public board until one of the large MiMedx shareholders asked Mr. Petit to consider placing Evans on the Board.  Thus, this takeover process started with the goal of finding ways to have the top executives forced out of the Company.

Very simply, this relatively inexperienced Board took control of the Company and terminated the CFO and Controller because the majority of the Board had decided to restate five years of revenues, and three weeks later asked the CEO and COO to step down because they wanted "to take the Company in a different direction."  From that point forward, a series of very destructive and irrational business decisions were made that were extremely destructive to the Company and extremely disturbing to the shareholders.

The Board first hired a temporary CEO who had no healthcare experience!  They expected him to run a very complicated and sophisticated biotechnology company, which he was incapable of doing.  They did not allow any transition communications with Petit and Taylor.  They promoted a short-term employee into the temporary

CFO role, and he became <u>solely</u> <u>focused</u> on attempting to have the Board elect him as the new CEO.  They also promoted someone who had been a <u>staff</u> <u>person</u> to Mr. Petit, the CEO, into a <u>line</u> <u>role</u> with significant responsibilities for over 80 employees.  That promotion began to cause significant problems.  He was later terminated!

With those decisions, the Company's new revenue growth dropped from 30% annual rates to actually little to <u>no</u> <u>growth</u>.  With the unmanaged legal and accounting expenses, the Board thought they had to terminate 24% of the workforce, which took place on December 5th in spite of Mr. Petit's communications asking them to examine the facts much more carefully.  Those layoffs devastated employee morale.  Sales plunged even further because they terminated 24% of the 400+ sales force.

Also, the temporary CFO went to NASDAQ in mid-September to convince them they would have the 2017 audit finished by the end of February of 2019.  The temporary CFO and several lawyers from Sidley Austin were allowed to do that presentation without any Board oversight, even though Charlie Evans, Chairman of the Board, was given specific advice from Petit, while he was on the Board, not to do so.  Evans claimed it was a "management prerogative," and Petit explained that, if this was not managed with Board oversight, it could result in the Company's stock being delisted.  Well, that is <u>exactly</u> <u>what</u> <u>happened</u> on November 7th when the Company had to go back and tell NASDAQ that the information the temporary CFO provided on September 13th was incorrect when he made the presentation.

At that point, the Company's stock had been driven down to below $1 per share with a $100 million market cap.  That price decline represented a 95% drop in the stock price.  Shareholders were irate because there were absolutely <u>no</u> <u>communications</u> from the Company due to the Sidley communications lockdown memo.

In order to justify the out of control spending associated with the investigation and audits, the Board decided that they needed to create the impression of a massive fraudulent operation at MiMedx.  Therefore, they eventually terminated 14 of the top 16 people that built the Company over the eight-year period into the fifth fastest growing public company in America.  These were all extremely competent individuals, some of who had served with Petit and Taylor in their former organizations for many years.  That decision further crippled the Company because, while subordinates were promoted, they did not have the experience, capabilities or business relationships of the former management team.

The previous MiMedx Board of Directors spent numerous hours and legal funds fighting the shareholders' request for a 2018 annual shareholders meeting.  Litigation was filed in the state of Florida by Hialeah Municipal Fund and was supported by Petit and the largest shareholders of MiMedx Group.  The Company fought having the 2018 meeting in every way possible, but it finally took place on June 17th as the result of a court order.  This resulted in three unassociated Board

members being elected and appointed to the Board.  In order to preclude Mr. Petit's slate of directors from being elected, the Company signed an agreement with an alternate slate of Board members.  Petit's main goal was to get changes made to the Board to offset their lack of experience, incompetence and their "takeover" objective.  At this point, only four of the original eight outside Board members remain.

Petit and Hialeah continue to campaign for the 2019 shareholders meeting to be held.  However, the Board had always been "entrenched," and they fought continually in the Florida court to not hold the shareholders meetings and change Board members.  The date for the 2019 meeting has still not been decided.

The Atlanta SEC case of insider trading against Mr. Petit that started in 2010 is a good example of the Commission filing charges against a successful business executive with no real evidence.  They accused Mr. Petit of passing inside information to a friend, Earl Arrowood, who was a former Delta Airlines pilot and Vietnam fighter pilot.  Petit and Arrowood flew together from time to time over the years.  Mr. Petit was accused of passing inside information prior to the sale of Matria Healthcare because Mr. Arrowood purchased shares in Matria Healthcare on a day that Mr. Petit had two telephone conversations with him.  However, Mr. Petit had one or two conversations a day with Mr. Arrowood for a week prior to that day, and he had the same conversation pattern with him for a week after that.  This was because Mr. Arrowood was helping Mr. Petit purchase an airplane.  Each one of them would talk to the seller, the lawyers, Cessna aircraft, etc. after each of those calls.  After the purchase, the calls dropped to about one per month again.

Mr. Petit took a lie detector test to prove his innocence, and he passed it with "flying colors."  However, that did not slow down the SEC investigation, and the SEC filed a lawsuit against Mr. Petit.  The Commission carried this investigation and lawsuit on for a total of four and a half years.

One interesting aspect is that Mr. Arrowood purchased two trauches of stock, one four months before the acquisition of Matria Healthcare was announced which he told Mr. Petit about after he made the purchase, and the second one which occurred approximately a month before the acquisition was announced, which he did not tell Mr. Petit about.  Mr. Arrowood held those shares for nine months and six months respectively.  When he sold them, he made a profit of $9,990.  It is certainly acknowledged that, had Mr. Petit passed on inside information, it would not have mattered what the profit on the sale was.  However, this a stark reminder of the SEC's motivation was more to denigrate and convict a successful Atlanta business person who had strong ties to Republican politicians than recovering fraudulent profits for the federal government.  The SEC dropped the case two weeks before the trial.

Petit inherited members of the MiMedx Board when he stepped in to run the Company as CEO and Chairman in 2009.  He left a few members in place because of

their shareholdings.  He added some people that he had some previous experience with, such as Terry Dewberry and Joe Bleser, who were on the Audit Committee.  He added two individuals at the request of two large shareholders.  These were Charlie Evans and Dr. Neil Yeston.  However, Mr. Petit never had the time to build the strength in this Board that he had in his previous Boards at Matria Healthcare and Healthdyne.  In those cases, he had CEOs and entrepreneurial CEOs who would have understood what was happening with this Company and had the courage to do the right things for the Company and its shareholders rather than worrying about CYA issues.

Regardless of the ineptitude of this Board and their corporate takeover, the Company would not have been forced to go through these unnecessary trials and tribulations had it not been for the illegal short selling orchestrated by Marc Cohodes.

EXHIBIT 8

**ILLEGAL SHORT SELLING AGAINST MIMEDX**
**October 22, 2019**

From about 2013 into 2017, a hedge fund by the name of Deerfield Management had been continually selling MiMedx stock short assuming the Company would be a "flash in the pan," and their revenue growth would drop significantly.  When that did not take place, it is estimated that Deerfield lost a very substantial amount of money (over $50 million) with their short positions.  Consequently, in the summer of 2017, some reliable sources indicated that Deerfield was going around the country encouraging other hedge funds to join them in a concerted short sell attack against MiMedx.  They managed to assemble such a group, and it is believed they aligned with Marc Cohodes in mid-2017 to orchestrate the attacks.

Also in 2017, the SEC fined Deerfied $4.5 million for not supervising two of their healthcare analysts who had bribed a CMS official in mid 2013 into giving them confidential information on forthcoming pricing/reimbursement changes for some dialysis companies.  These two analysts were the same individuals who covered MiMedx for Deerfield.  Theses two individuals were subsequently indicted for this bribery activity.  They could have conducted the same malfeasance against MiMedx because there were CMS pricing changes for MiMedx products being considered in the summer of 2013.  MiMedx shares that were sold short escalated from approximately two million to over 20 million during the summer of 2013.

The major illegal short selling began in the fall of 2017 with coordinated trading attacks on the Company that matched up with social media and journalistic articles being published.  These groups engaged in "front running" or positioning themselves prior to the information releases coming public, which they actually developed, which is illegal.  On the day of the attack, they would engage in "layering" and "spoofing" to push the share price down, which is illegal.  In addition, they would extol the virtues of the accuracy of their fraudulent publications by pointing to the fact that the share price declined substantially!  Also, often they participated in naked short selling of their contracts, which is illegal.

The SEC calls this type of action out in a Bulletin entitled "Social Media and Investing – Stock Rumors," which was modified on February 6th, 2017.  There are a number of illegal issues about this type of activity.  These illegal short sellers were very adept at taking sales personnel who MiMedx fired for cause (selling competitive products on the side) and turning them into whistle blowers and individuals who would create and make up allegations for them.  The propensity for lying by these sales personnel was very evident in their depositions taken for the civil lawsuits the Company filed.

Two of the terminated group of sales employees made allegations in late 2016 of channel stuffing and other accounting irregularities through their Minneapolis attorney, Clayton Halunen.   They were trying to break their non-compete contracts

with the Company.  Halunen went public with that information when MiMedx would not agree to his extortion request for his clients.

This group and other sales persons who became involved with accusations did not understand the Company's accounting processes and procedures relative to the AvKare federal contract.  Actually, neither did their attorney!  Their attorney did no due diligence on his clients' allegations before he went public with them. Incidentally, only in the U.S. judicial system is this type of disclosure by an attorney allowed without proper due diligence and proof.  In the other judicial systems of developed countries, this type of unverified disclosure is unlawful!  Also, executives were told that Mr. Halunen called Mr. Ty Cotrell of the Denver SEC office to make his client's allegations as had Marc Cohodes done with the other terminated employees.

This was a very aggressive short selling campaign because Cohodes sent accusatory letters to senators, congressmen, the new auditors, Ernst & Young (E&Y), and hospitals where MiMedx was doing their research programs.  Cohodes has made false allegation after false allegation in trying to disrupt MiMedx business in every way possible.

In early 2018, Petit along with Bill Taylor, President, and Lexi Haden, General Counsel, were called to the DOJ offices in New York to meet with investigators.  At that meeting, they were told that the DOJ knew more about Marc Cohodes than they were being given credit for knowing.  They said that they were investigating him for international money laundering and other fraudulent activities, and they had been in contact with Canadian and European authorities.  Petit, Taylor and Haden told the agents about Cohodes' short-and-distort campaign against MiMedx, and the agents asked to be provided with the evidence that Cohodes was engaged in fraud-based illegal activity relative to MiMedx.  The evidence was collected and reviewed by the Sidley Austin law firm.  However, it was never sent because David Rody, a Sidley attorney, told the Board that AUSA Quigley at the DOJ, who he had previously known, did not want the fraudulent information sent.  That was a lie told by Rody, which was later verified by Quigley in writing.  The reason that Rody did this probably relates to the Company being advised to not discuss illegal short sellers by the regulators.

After the first two terminated employees made allegations of channel stuffing at VA hospitals and other accounting irregularities in late 2016, the Audit Committee of the MiMedx Board of Directors engaged their outside counsel, Troutman Sanders, to investigate.  The Investigation included extensive document review and witness interviews.  Both Troutman Sanders and the Audit Committee concluded that there had been no channel stuffing or other accounting irregularities.  The Company published a press release announcing the Audit Committee's findings and conclusions in early March 2017.

Those conclusions did not serve the purposes of Cohodes and his fellow short sellers, who needed someone to make findings of misconduct at MiMedx in order to

continue to drive the stock price down.  So, in February 2018, Cohodes sent a letter to the Company's <u>new</u> big four auditor, Ernst &Young, threatening that if E&Y did not conclude that there had been channel stuffing and accounting fraud at MiMedx, E&Y itself could be sanctioned or held liable.

Months earlier, in November 2017, Petit had warned the E&Y engagement partner, Andy Brock, that such a corrupt letter could be coming, and urged him to notify his partners in New York.  Brock brushed off the warning, saying E&Y was used to such "stuff."  However, when the letter arrived, E&Y could not manage the threats because it feared blowback from its own oversight organizations, the SEC and the PCAOB.  So it told the Company in February of 2018 that it would not finish the 2017 audit until the Company thoroughly investigated <u>all</u> of the <u>Cohodes</u> <u>allegations</u>, including the ones that the Audit Committee and Troutman Sanders had already investigated.

After E&Y delivered this ultimatum to the Board, Petit told the Board that he did not expect E&Y to <u>ever</u> finish the audit.  Petit stated that as soon as they had investigated one set of Cohodes' allegations, Cohodes would make more, and that E&Y was so fearful of SEC and PCAOB oversight that it would insist that each new allegation be investigated before it could complete the audit.  Petit predicted that E&Y would <u>resign</u> from the account rather than finish the audit under these circumstances (which is exactly what happened on November 7, 2018, and many millions of dollars in E&Y costs later).   Petit suggested that the Company bring back Cherry Bekaert to complete the 2017 audit, which Petit felt could take place within 60 to 90 days, and then consider switching to a new big four auditing firm.   But, the majority of the Board decided to stick with E&Y and meet all of their demands -- and the lengthy, costly and destructive saga that has been MiMedx's recent history began.

This "opinion" by certain members of the Ernst &Young staff resulted in the Company basically terminating their 24-year relationship with the Troutman Sanders law firm in Atlanta.  When making those particular allegations, E&Y faulted the Chairman of the Audit Committee, Terry Dewberry, and the Audit Committee itself with conducting an <u>inadequate</u> investigation of these charges made by the two individuals who were first caught selling competitive products on the side while being full-time MiMedx employees.  They insinuated that the investigation should have included a very expensive "forensic audit."  Petit advised that the Board should push back on these E&Y "opinions!"

From that point forward, the Audit Committee was in total charge and had full responsibility for the investigation and ensuing audits.  However, they never prepared a schedule, a budget or scope for this expensive project.  The Audit Committee selected King and Spalding (the Sally Yates law firm; see information on the Sally Yates Doctrine) to conduct the investigation and KPMG to conduct a forensic audit.  The Audit Committee and Board then effectively turned over most of the Company's key audit decisions and many of its business decisions to E&Y, King

and Spalding, and KPMG.  In addition, the Company was being "encouraged" to select a new law firm by E&Y.

King and Spalding and KPMG began their investigation in March of 2018, and in less than three months they formed an opinion that the Company had improperly accounted for revenue from their federal distributor, AvKare, for the preceding five years, necessitating a five-year restatement of the company's financials.  They formed this opinion even though it was the exact opposite of what Troutman Sanders and Cherry Bekaert had concluded just a year earlier.  They also formed it without giving executive management a meaningful opportunity to provide input about the non-accounting data they used to make this GAAP related decision.  As a result, they got it wrong.

So why did the Audit Committee recommend to MiMedx's Board that it adopt this new opinion of how revenues with its federal distributor should have been accounted for?  Because it matched the Audit Committee's CYA goals and finding fault with management that would result in dismissals.  Like E&Y, the Audit Committee and Board were intimated by all of the short seller allegations and decided that it was safer for them to "scapegoat" top management for those imaginary wrongdoings than defend against them.  Also, King & Spalding was pushing the Sally Yates Doctrine since she just returned from the DOJ in DC after the President had fired her.

MiMedx executive management used a very sophisticated, orderly, bottom-up method of predicting quarterly demand for its products that yielded extremely accurate sales forecasts so the quarterly revenue forecasts were from sales management and not numbers desired by Petit or Taylor.  That did not mean, of course, that there was no need to incentivize sales people or inquire about the reasons particular sales people or regions were falling short of their own sales predictions.  However, top management never encouraged sales people to do anything unethical, let alone illegal.

The termination of Petit and other top executives at MiMedx is an indirect result of illegal short selling that went unchecked by U.S. regulatory agencies such as the SEC and the Department of Justice.  MiMedx provided information and evidence about the illegal short selling to those agencies, but to Petit's knowledge, they did nothing about it.  That made it possible for Marc Cohodes to intimidate Ernst & Young, the MiMedx Board of Directors, and the MiMedx Audit Committee, with disastrous results for the Company, its shareholders, its employees and its executives.

EXHIBIT 9

4/7/2020
Case 4:20-cv-02469-KAW   Document 1   Filed 04/10/20   Page 64 of 144
Sen. Johnny Isakson Called FBI on Behalf of MiMedx Group - WSJ

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

https://www.wsj.com/articles/sen-johnny-isakson-called-fbi-on-behalf-of-mimedx-group-11545934861

U.S.

# Sen. Johnny Isakson Called FBI on Behalf of MiMedx Group

Republican lawmaker followed up on complaint about investor critical of beleaguered biomedical firm



MiMedx founder Parker 'Pete' Petit has been a political supporter of Sen. Johnny Isakson (R., Ga.), above.

PHOTO: ALEX BRANDON/ASSOCIATED PRESS

*By Gretchen Morgenson and Charley Grant*

Dec. 27, 2018 1:21 pm ET

Sen. Johnny Isakson, a Georgia Republican, called the Federal Bureau of Investigation in October 2017 to follow up on a complaint lodged by Parker "Pete" Petit, the founder of biomedical company MiMedx Group against an investor who criticized the company and Mr. Petit.

Mr. Petit had complained to the FBI and Mr. Isakson called the FBI to ask that they respond to the complaint, his spokeswoman confirmed, adding that Mr. Isakson didn't request a specific outcome.

Seven weeks later, the investor, Marc Cohodes, received a visit from two FBI agents who told him that if he didn't stop posting negative tweets about Mr. Petit and MiMedx, "there would be consequences," he told The Wall Street Journal. The FBI, in response to a question from the

Journal, said Mr. Cohodes had been threatening Mr. Petit on Twitter, which Mr. Cohodes disputes.

A year ago, MiMedx, a maker of amniotic-tissue grafts based in Georgia, was a highflying health-care company. Now, it faces multiple federal <u>investigations over its accounting and sales practices</u> and <u>Mr. Petit has been fired</u> for conduct the company called "detrimental" to its business or reputation. The stock, which peaked at around $18 last January, is now $1.40. At the time, lawyers for Mr. Petit called the action "deeply disappointing."

Mr. Petit has been a political supporter of Mr. Isakson, contribution records show, and Mr. Isakson has called Mr. Petit a longtime friend.

Documents produced under the Freedom of Information Act show correspondence between Mr. Isakson and the FBI's congressional affairs office regarding MiMedx, Mr. Petit and Mr. Cohodes from Oct. 13, 2017, through Jan. 25, 2018.

Although heavily redacted, the emails document a phone call Mr. Isakson, who is the chairman of the Senate Select Committee on Ethics, had with the FBI as a "victim referral." They show Mr. Isakson following up with the FBI several weeks later, requesting the agency's findings. "Please be assured this matter has been brought to the attention of the appropriate personnel for any action deemed necessary," an official in the FBI Criminal Investigation Division responded, according to the documents.

Amanda Maddox, the spokeswoman for Mr. Isakson, said: "Constituents contact us when they are seeking help from a federal agency and, in many cases such as this one, when they want to make sure the agency is aware of their concerns about an issue." She didn't provide an answer as to how many times in a year Mr. Isakson typically calls the FBI on behalf of those constituents.

Mr. Petit didn't respond to emails seeking comment.

The San Francisco FBI, which dispatched the agents to Mr.Cohodes's nearby home, provided a statement from Brenda Atkinson, chief division counsel: "All FBI investigative activity is premised upon the fundamental duty of government to protect the public, and is performed with care to protect individual rights and to ensure that investigations are confined to matters of legitimate government interest."

David Shapiro, a former U.S. Attorney for San Francisco who is Mr. Cohodes's lawyer, said: "What has been disclosed looks like the misuse of power and influence by Isakson and Petit and violations of the FBI's own policies regarding free speech." He said comments made by Mr. Cohodes were neither intended nor likely "to incite imminent lawless action," two tests for action against the exercise of free speech in the FBI Domestic Investigations and Operations Guide. Mr. Shapiro, in a letter dated Dec. 10, has asked the FBI to investigate its actions.

The FBI disputed Mr. Shapiro's view. "In this instance, the Special Agents complied with FBI policy and we consider this matter closed," it said.

On Oct. 10, 2017, Mr. Cohodes, a well-known short seller, including of MiMedx stock, had made a presentation criticizing MiMedx at an investor conference in New York. Mr. Cohodes cited complaints by former employees who said they were fired after telling Mr. Petit about extensive wrongdoing at the company. After the presentation, Mr. Cohodes began posting critical tweets about MiMedx and Mr. Petit.

Three days later, on Friday, Oct. 13, 2017, Mr. Isakson called the FBI, which in turn moved quickly on the senator's request, the documents show. The following Monday, an official in Mr. Isakson's office wrote to the FBI, "Really appreciate your fast help on a Friday."

On Dec. 1, 2017, Mr. Cohodes was at home when two FBI agents arrived and started asking him about two of his tweets, he said. One, dated Oct. 14, 2017, referred to Mr. Petit in which Mr. Cohodes said he'd "bury the little fella in a shoe box." Mr. Cohodes said he mentioned a shoebox because former MiMedx sales representatives had told him employees stored tissue products they claimed to have sold to doctors or hospitals in shoeboxes in their cars.

One of the agents told Mr. Cohodes to stop sending "threatening tweets" about Mr. Petit, he recalled. Mr. Cohodes asked the agents to leave, but they refused, he said. He called the county sheriff and after he arrived, the agents left, he said.

Mr. Isakson's call to the FBI isn't the only intervention he has made on behalf of MiMedx. The Journal has reported that he also contacted the Department of Veterans Affairs for the company in 2016 when the department decided to change its policy on accepting consignment merchandise from vendors.

Supplying VA hospitals was a big part of MiMedx's business and the department's policy change threatened the company's ability to stock the VA with goods on consignment and book them as sales, former employees said. In May 2016, after having received a letter from the company complaining about the VA's acquisition process, Sen. Isakson asked the Senate VA committee staff to follow up.

Ms. Maddox said the senator "does his very best to make the VA aware and learn about proposed solutions" to problems identified by constituents.

Write to Gretchen Morgenson at gretchen.morgenson@wsj.com and Charley Grant at charles.grant@wsj.com

*Appeared in the December 28, 2018, print edition as 'MiMedx Investor Faced Query by FBI.'*

Copyright © 2020 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

EXHIBIT 10



March 11, 2020

**BY ONLINE SUBMISSION (FOIA STAR)**

U.S. Department of Justice
Office of Information Policy (OIP)
441 G Street NW, Sixth Floor
Washington, D.C. 20001
DOJ.OIP.FOIA@usdoj.gov

> *Re:   Supplement to Freedom of Information Act Appeal of the DOJ, FBI, and EOUSA's Constructive Denial of Freedom of Information Act Request Nos. EMRUFOIA011520-3 (DOJ), 1457448-000 (FBI), and EOUSA-2020-001161 (EOUSA) submitted by Matthew Turetzky on January 15, 2020*

To Whom It May Concern,

This is to supplement the appeals of the constructive denials by the Department of Justice, the Federal Bureau of Investigation, and the Executive Office of United States Attorneys of the Freedom of Information Act (FOIA) Requests Nos. EMRUFOIA011520-3 (DOJ), 1457448-000 (FBI), and EOUSA-2020-001161 (EOUSA) (collectively, the "Turetzky Requests"). These appeals were given Appeal Nos. A-2020-00208, A-2020-00209, A-2020-00210, and A-2020-00211 (collectively, the "Turetzky Appeals").

On Friday, March 6, 2020 – more than two weeks after the 20 work-day deadline to respond, which fell on February 13, 2020 – I received a letter dated February 28, 2020 purporting to respond to FOIPA Request No. 1457448-000. The letter stated it was "releasing documents from previous requests regarding your subject." Enclosed was a Compact Disc that contained a 12-page PDF file with numerous redactions.

This PDF file is identical to the one that your office released in response to Quinlan/Margaret Foster's May 10, 2018 FOIA request (referred to below as the "Quinlan Request"). Quinlan appealed that response on January 15, 2019 on the grounds that the redactions and the withholding of additional documents was not justified under the FOIA. Your office never ruled on that appeal.

Your office's February 28, 2020 response does not resolve the concerns raised in my appeals. I am therefore appealing your office's February 28, 2020 response and ask

that you resolve this appeal together with the Turetzky Appeals.  Specifically, this appeal challenges (a) the FBI's decision to withhold 33 pages out of 43 pages that were admittedly reviewed by the FBI, (b) the redactions on the 10 pages that were produced, (c) the FBI's failure to disclose any reports of interview or investigation that its agents prepared before and after their visit to Mr. Cohodes and whose contents were shared in any degree with the senator, and (d) the decision to withhold correspondence between Senator Isakson and MiMedx and/or any of its officers or employees.

Accompanying this appeal is a waiver by Marc Cohodes of any privacy interest he may have in the withheld and redacted documents.  This waiver was provided with my FOIA requests.

## I. __Background__

The records at issue relate to efforts by MiMedx and its then-CEO Parker "Pete" Petit to enlist U.S. Senator Johnny Isakson to personally encourage the FBI to take action against Marc Cohodes, a critic of MiMedx's business and accounting practices.  In response to the senator's complaints about Mr. Cohodes, the FBI sent two of its agents to Mr. Cohodes's home, where the agents threatened "consequences" if Mr. Cohodes did not stop speaking about MiMedx.  Those threats violated the First Amendment of the U.S. Constitution and the FBI's own policies.

On May 10, 2018, Quinlan submitted two FOIA requests to the Department of Justice and the Federal Bureau of Investigation seeking records related to correspondence between Isakson and the FBI regarding MiMedx, Parker "Pete" H. Petit and Marc Cohodes.  *See* Exhibit A and Exhibit B.  In an effort to assist the DOJ and FBI in processing the FOIA Request more efficiently, Quinlan agreed to combine these two separate requests into one and was provided the Request No. 1405921-000.  The combined requests are referred to herein as the "Quinlan Request."

The Quinlan Request sought the following records from the DOJ and FBI's files:

- Correspondence by U.S. Senator Johnny Isakson with the FBI "relating to MiMedx, Parker Petit, or Marc Cohodes"
- Correspondence by U.S. Senator Johnny Isakson with the Department of Justice "relating to MiMedx and Parker 'Pete' H. Petit"

On July 16, 2018, the Department of Justice's Office of Legislative Affairs ("OLA") advised that a search of the electronic database of the Departmental Executive

Secretariat, which maintains certain OLA records, including records of Department correspondence, yielded no records responsive to Quinlan's request.[1]  *See* Exhibit C.

On December 11, 2018, the FBI issued a partial denial of the Quinlan Request, releasing 10 out of 43 pages of reviewed records, citing Exemption 6, Exemption 7(C), and Exemption 7(E).  *See* Exhibit D.  The produced documents were redacted so thoroughly that the redactions obscure nearly every relevant detail.

The FBI thus appears to have identified 43 responsive pages of documents, removed 33 or 34 pages in their entirety, and then produced 10 pages of largely-redacted emails and letters.  See Exhibit D at 4 (entitled "Deleted Page Information Sheet").

The FBI did not explain why 33 pages were deleted from the production.  It asserted that 21 pages were "duplicate," but did not explain what those pages duplicated or why duplicates of responsive documents should not be disclosed.  As to the 10 produced pages, the FBI claimed those contained information that falls within Exemptions 6, 7(C), and 7(E).

The FBI advised the Wall Street Journal that any action concerning Mr. Cohodes is now "closed."[2]  FOIA exemptions are less applicable in closed matters because disclosure cannot interfere with ongoing proceedings.  *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1097 (D.C. Cir. 2014) ("The cases are closed—not pending or contemplated—and therefore are not proceedings with which disclosure may interfere.").

Correspondence dated October 13, 2017, October 16, 2017, November 1, 2017, November 2, 2017, November 17, 2017, and November 20, 2017 between Isakson's office and the FBI was redacted almost in its entirety, shielding from public view nearly every detail specific to the now-closed case.  *See* Exhibit D.

---

[1] The Quinlan Request was originally directed to the FOIA/PA Mail Referral Unit (MRU), Justice Management Division.  MRU routed the request to the Criminal Division (CRM), who then sent the request to the Office of Legislative Affairs for processing.  The MRU, CRM and OLA tracking numbers associated with this request are EMRUFOIA051018-1, CRM-300669585, and DOJ-2018-006108, respectively.

[2] Gretchen Morgenson and Charley Grant, "Sen. Isakson called FBI on Behalf of MiMedx Group," *The Wall Street Journal*, December 27, 2018, https://www.wsj.com/articles/sen-johnny-isakson-called-fbi-on-behalf-of-mimedx-group-11545934861 (accessed January 8, 2019).

On January 15, 2019, my colleague David Shapiro filed on Quinlan's behalf an appeal of the FBI's denial of the Quinlan Request (referred to here as the "Quinlan Appeal"). *See* Exhibit E. Your office never responded to that appeal.

One year later, on January 15, 2020, I submitted the three requests at issue in this appeal (Requests Nos. EMRUFOIA011520-3 (DOJ), 1457448-000 (FBI), and EOUSA-2020-001161 (EOUSA)). The requests were slightly broader than the Quinlan Request. They sought "all correspondence and communications between Senator Jonny Isakson, his staff, his employees, or any person acting on his behalf and the [DOJ, FBI, and the U.S. Attorney's Office (USAO) in the Southern District of New York (SDNY)] referring or relating to MiMedx, Parker Petit, or Marc Cohodes" and "all documents and communications in the possession, custody, or control of the [DOJ, FBI, and the USAO SDNY] referring or relating to Marc Cohodes." The requests included a signed privacy release by Mr. Cohodes on form DOJ-361 and my agreement to pay reasonable duplication fees not to exceed $1,500 per request. *See* Exhibit F.

The FOIA requires agencies, such as the DOJ, FBI, and the EOUSA to respond within 20 working days of receiving a request. 5 U.S.C. § 552(a)(6)(A)(i). The agencies did not respond within the 20 working-day deadline. The FOIA treats such failures to respond as constructive denials. 5 U.S.C. § 552(a)(6)(C)(i).

On February 21, 2020, I appealed the constructive denial of Requests Nos. EMRUFOIA011520-3 (DOJ), 1457448-000 (FBI), and EOUSA-2020-001161 (EOUSA) (the Turetzky Appeals). Your office has not yet responded to the Turetzky Appeals, but is required to do so by March 20, 2020.

On March 6, 2020, I received a letter dated February 28, 2020 purporting to respond to FOIPA Request No. 1457448-000. The letter stated it was "releasing documents from previous requests regarding your subject." Enclosed was a Compact Disc containing a 12-page PDF file with numerous redactions. The letter and the PDF file is attached here. *See* Exhibit G.

Because the government's March 6, 2020 response appears identical to the government's response to the Quinlan Request, I am supplementing my pending appeals for the same reasons set forth in the Quinlan Appeal.

## II.   Argument

### The Purpose and Scope of the Freedom of Information Act

FOIA embodies "a general philosophy of full agency disclosure," *Department of the Air Force v. Rose,* 425 U.S. 352, 360 (*quoting* S. Rep. No. 813, 89th Cong., 1st Sess. 3 (1965)). "The 'basic purpose' of the Freedom of Information Act … is 'to open agency

action to the light of public scrutiny.'" *Liberman v. Dep't of Transportation*, 227 F. Supp. 3d 1, 2 (D.D.C. 2016) (*quoting Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989)).

FOIA mandates that an agency disclose records on request, unless they fall within one of nine exemptions. These exemptions are "explicitly made exclusive" and must be "narrowly construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citations omitted).

Critically, it is the *agency*, not the requestor, that "bears the burden to establish the applicability of a claimed exemption to any reports or portions of records it seeks to withhold. *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 673 (D.C. Cir. 2016).

Agencies asked to produce documents must identify *specific* privacy interests implicated by the information and then balance those interests against the public interest that may be served or disserved by disclosure. *See U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 762 (1989).

An agency must justify any exemption on a document-by-document basis, and "it is now axiomatic that in order to satisfy its burden of establishing that an exemption claim is justified, the government may not rely on 'conclusory and generalized allegations.'" *War Babes v. Wilson*, 770 F. Supp. 1, 4 (D.D.C. 1990) (*quoting Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)). Where the agency has done nothing more than "parrot the statutory standard" in justifying an exemption, that explanation fails. *Bagwell v. Dep't of Justice*, 2015 WL 9272836, at *2 and *4 (D.D.C. Dec. 18, 2015).

Section 552(a)(2) also requires the agency to explain "fully in writing" its justification for refusing to disclose records under an "unwarranted invasion of privacy" claim. 5 U.S.C. § 552(a)(2). Even if it can fully justify the application of that exemption, the agency may only redact "identifying details," and not – as the FBI has done here – redact the substance of the communications. Identifying details might include addresses, telephone numbers, and social security numbers.

## The FBI Failed to Produce Records of its Interactions With MiMedx and Marc Cohodes

The FBI regularly conducts investigations and documents its activities. Here, the FBI responded to a senator's request by directing two agents from its San Rafael office to confront Mr. Cohodes about his public statements concerning MiMedx. Those agents undoubtedly recorded the interaction in a memorandum or report, yet the FBI produced nothing reflecting the agents' own conduct.

Your Office should direct the FBI to produce those reports to the extent their content, or any part of the content, was shared with Senator Isakson.

In addition, the FBI identified 33 pages of documents that were responsive, but which it decided not to produce.  The only explanation for that decision was the FBI's reference to 21 of those pages as "duplicate."  Duplicate responsive records must be produced.  Those duplicates may reflect distributions to different people or agencies that the public has the right to know about.  The number of "duplicate" pages is minimal and thus would not be burdensome for the FBI to produce.

Your Office should direct the FBI to produce all documents that it withheld.

## The FBI Incorrectly Invoked Exceptions to FOIA

With respect to the documents that were produced and that were also redacted, the FBI has claimed that virtually all of the details of communications among Senator Isakson, MiMedx, and the FBI about Marc Cohodes are private – and so private that disclosing them would constitute a "clearly unwarranted invasion of personal privacy." To state the proposition is to reject it.  A senator, a federal law enforcement agency, and a publicly traded corporation (which has also publicly admitted to filing false financial statements with the SEC) are nothing other than two public servants and a publicly-traded corporation.  There are no personal privacy interests among those three parties.

Moreover, the FBI has failed to show that its invocations of law enforcement exemptions are justified.  Exemption 7(C) cannot apply to cases that are now widely known and adjudicated, and Exemption 7(E) does not apply to investigatory techniques that are already widely known.  The FBI provided no written explanation of why disclosure of the contents of the responsive documents was justified.

## Exemption 6 Does Not Justify Withholding the Public Documents or the Redactions

The FBI claims that it may withhold and redact information in responsive documents under Exemption 6, which applies only where release of  "personnel and medical and similar files … would constitute a *clearly unwarranted* invasion of personal privacy."  5 U.S.C. § 552(b)(6) (emphasis added).  The FBI has not, and cannot, meet the standard for this exemption.

*First*, the FBI has not explained "fully in writing" the personnel, medical or similar file that was implicated by the FOIA request.  It did not then explain what significant privacy interest someone had in that information.  And it did not explain why disclosure of that personal privacy would be unwarranted.  Nor could it.

Communications between the senator, MiMedx, and the FBI did not concern a medical or personnel file, or any file that is similar to such files.  That alone makes

Exemption 6 inapposite.  *See Schonberger v. NTSB*, 508 F. Supp. 941, 942 (D.D.C. 1981)
("To satisfy exemption six, the defendants must meet both aspects of the statutory test,
showing that the material requested 1) is part of a personnel, medical, or similar file, and
if so 2) would, if disclosed publicly, constitute a clearly unwarranted invasion of *personal
privacy*.") (emphasis added).  "If no significant privacy interest is implicated . . . FOIA
demands disclosure."  *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873,
874 (D.C. Cir. 1989).

"Similar files" means files that contain *personal* information about particular
individuals.  *United States Department of State v. Washington Post Co.*, 456 U.S. 595
(1982).  In other words, files are not similar to personnel or medical files unless they are
"detailed records containing personal information" about particular people.  *Cook v. Nat'l
Archives & Records Admin.*, 758 F.3d 168, 175 (2d Cir. 2014).  For example, names,
employment information, and limited financial information that does not disclose
"intimate details" of one's finances are not "personal."  *See Wash. Post Co. v. U.S. Dep't
of Health & Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982).

No personal files were implicated by the Turetzky Requests here.  Files
concerning the communications among the senator, MiMedx, and the FBI concerned
whether the FBI would take action to try to silence Marc Cohodes.  To the extent that the
files concern Mr. Cohodes personally, he filed the appropriate form with his FOIA
requests (Form DOJ 361) and separately advised the Department of Justice he has no
concerns about the release of his name or the details of the FBI's threats to him.  To the
contrary, he has filed complaints with the Director of the FBI and its Inspector General
about the FBI's threats.  *See Washington Post Co.*, 456 U.S. at 602 (personal information
is information that "applies to a particular individual").  The privacy interest inherent in
Exemption 6 "belongs to the individual, not the agency holding the information."
*Reporters Comm.*, 489 U.S. at 763-65.  The FBI cannot invoke the exemption to withhold
information that pertains to someone who has no objection to its release.  *Id.* at 771.

Moreover, there is nothing "personal" or private about what the FBI (and the other
players) did here:  the senator used his political position and power to encourage the FBI
to exercise its investigative powers in a particular way.  There is nothing personal or
private about it.

In addition, MiMedx and its attorneys *affirmatively* contacted Senator Isakson and
asked him to file a complaint about Mr. Cohodes with the FBI.  Their names are thus not
private or personal in these circumstances.  The only person who might have a privacy
interest in that scenario is Mr. Cohodes, who was accosted at his home by FBI agents and
threatened.  But Mr. Cohodes has every interest in having the documents disclosed and
consents to their disclosure.

*Second*, the FBI has not demonstrated, and cannot demonstrate, that the as-yet unidentified privacy interests of MiMedx, Senator Isakson, or the FBI are sufficiently important to overcome the public interest in disclosure of responsive documents. In evaluating an assertion of Exemption 6, a court must "balance the public interest in disclosure against the interest Congress intended Exemption 6 to protect," and any such privacy interest must be "substantial." *Am. Immigration Lawyers Ass'n*, 830 F.3d at 673; *see also Department of the Air Force v. Rose*, 425 U.S. 352, 380 n.19 (1976) ("Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities.").

The redacted records reflect only correspondence between Isakson and the FBI and follow-up complaints and discussions – all generated because Mr. Cohodes was criticizing a publicly-traded company. Since MiMedx, the senator, and the agents or others voluntarily chose to act to threaten Mr. Cohodes, it cannot be an "unwarranted" invasion of their privacy to disclose what they said and did.

Moreover, to the extent the privacy interest at stake belonged to Senator Isakson, he retired on December 31, 2019. *See* https://www.cnn.com/2019/08/28/politics/johnny-isakson-retire/. With Senator Isakson no longer serving as a United States Senator, the public interest in learning about his interactions with Parker "Pete" Petit outweigh any privacy concerns that might exist.

*Third*, the FBI may have an interest in keeping ongoing investigations private, pending a decision by the U.S. Attorney whether to prosecute a case, but the FBI has no such interest here. The FBI never presented any case against Mr. Cohodes to federal prosecutors or to a grand jury, and it has publicly stated to the Wall Street Journal that the "matter" of its visit to Mr. Cohodes is closed.

## Exemption 7(C) Does Not Justify Withholding the Public Documents or the Redactions

The FBI also cited Exemption 7(C) to justify redacting portions of the responsive documents. This exemption, like Exemption 6, applies only where release of records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). It is the law enforcement counterpart to Exemption 6. It protects the "'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.'" *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990). It applies only to individual privacy interests, and not to any claims of privacy by a corporation, a senator acting in his role as an elected official, or the FBI. *See Reporters Comm.*, 489 U.S. at 764 n.16 (citing authorities supporting proposition that privacy rights belong to individuals).

The protective scope of Exemption 7(C) *as to third parties* (and the Senator, MiMedx, and the FBI are not third parties) is limited to "the specific information to which it applies [i.e., names, addresses and other identifying information], [but] not the entire page or document in which the information appears[.]" *Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 43 (D.D.C. 2003) (*citing Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000)).

There are no private documents at issue here; all are communications among three unaffiliated parties. All three of those parties are public entities in one fashion or another – a politician, a federal law enforcement agency, and a public company. All three acted in concert to stifle public criticism by a well-known investor. None asked the FBI for confidentiality, and the FBI did not conduct any undercover or otherwise secret investigation.

All of the communications at issue were made voluntarily – and with the hope and intention that Mr. Cohodes would be confronted with the full force of the FBI's intimidating power. None of the parties to the communications was the subject of an FBI generated investigation; those parties generated the investigation. Nothing about the communications implicates anyone's personal privacy, let alone an "unwarranted invasion" of personal privacy.

In short, FOIA was meant to require disclosure in exactly this situation: one citizen invoked the power of the Senate and the FBI to shut down criticism by another citizen. The public question involved is clear: how did the FBI function in this particular circumstance?

## <u>Exemption 7(E) Does Not Justify Withholding<br>the Public Documents or the Redactions</u>

The FBI redacted portions of the responsive documents because, it claimed, their production "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

"Exemption 7(E) only exempts investigative techniques not generally known to the public." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995); *see Rugiero v. DOJ*, 257 F.3d 534, 551 (6th Cir. 2001). Indeed, "[i]f an agency record discusses 'the application of [a publicly known technique] to ... particular facts,' the document is *not exempt* under 7(E)." *Am. Civil Liberties Union of N. California v. Dep't of Justice*, 880 F.3d 473, 491 (9th Cir. 2018) (rejecting agency invocation of Exemption 7(E) to withhold records describing methods to obtain a suspect's location information) (emphasis added).

Senator Isakson's "Victim Referral" and his request for follow-up information did not ask the FBI to use undisclosed law enforcement techniques.  The Senator asked the FBI to take action against Marc Cohodes, at the behest of MiMedx, and the FBI complied by sending two FBI agents out to threaten Mr. Cohodes into silence.  That is standard, well-known (albeit heavy handed and unconstitutional) law enforcement.  Unless the FBI can demonstrate that it has a legal and secret program designed to stifle the expression of ideas and opinions, the FBI cannot demonstrate that Exemption 7(E) applies here.

The FBI will be hard pressed to demonstrate that it has a program designed to send agents out to tell people not to post comments and opinions on the internet because the agency's own operating manual *prohibits* conducting any investigation at all that implicates the exercise of First Amendment rights.  *See* FBI Domestic Investigations and Operations Guide – DIOG – 2013 Version Part 01 at ¶¶ 3.3.1.3 and 3.3.1.4 (agents must "[e]nsure that civil liberties and privacy are protected throughout the Assessment or investigative process" and may "[c]onduct no investigative activity based solely on the exercise of First Amendment activities") (emphasis in original); *see id*. ¶ 5.3 (same).

On the other side of the scale, the public interest in knowing the reasons why the FBI sent two armed agents to a man's home to tell him to stop talking about a public company, violating its own requirement to use the least intrusive method of inquiry, *see id*. ¶4.4.1, is significant.  The public certainly has an interest in knowing that government employees have been used by a corporate political contributor to silence its critics.

The FBI also cannot demonstrate that its "technique" of interviewing people, if known to the public, would allow criminals to circumvent the law.  Indeed, the FBI did what any ordinary investigator would do when acceding to the requests of a powerful and influential member of Congress:  it confronted Mr. Cohodes with two FBI agents who essentially told him to stop talking about MiMedx or there would be "consequences."

The correspondence from MiMedx to the senator and from the senator to the FBI did not implicate a secret law enforcement technique.  The conduct of the FBI similarly did not implicate any law enforcement technique.  Everyone in America knows that FBI agents conduct interviews.  Disclosure of the communications that led to the Cohodes interview and reports reflecting that interview would not damage a secret investigative technique.

### The FBI Must Release All Reasonably Segregable Information

The FOIA directs the FBI to segregate and release all information that does not merit protection.  5 U.S.C. § 552(a)(8)(A)(ii)(II).  In its partial production, the FBI redacted every piece of information remotely relating to these individual cases, regardless

March 11, 2020
Office of Information Policy
Page 11

of whether the information was sensitive or related to the petitioner himself (or someone else).  Reasonable efforts to segregate non-exempt information are mandated by the law.

**III.**     <u>**Conclusion**</u>

I therefore appeal the government's denials of my FOIA requests and further request that you respond to this appeal within 20 working-days as required by statute.  5 U.S.C. § 552(a)(6)(A)(ii).

If you have any questions about this administrative appeal, please contact me by email at mturetzky@nortonlaw.com or telephone at (510) 906-4905.


Sincerely,


Matthew W. Turetzky


Enclosures

# EXHIBIT

# A

# quinlan

**Charleston**
38 Romney Street, Suite 202
Charleston, South Carolina 29403

**Washington**
1901 North Fort Myer Drive, Suite 1021
Arlington, VA 22209

May 10, 2018

FOIA/PA Mail Referral Unit
Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001
Phone: (202) 616-3837
MRUFOIA.Requests@usdoj.gov

Dear FOIA Officer:

Pursuant to the terms of the Freedom of Information Act, 5 U.S.C. § 552, I formally request that you, in your official capacity, provide me with copies of:

- All of U.S. Senator Johnny Isakson's correspondence with the Department of Justice relating to MiMedx and Parker "Pete" H. Petit.

I would like to receive the information in an electronic format, if possible. I agree to pay reasonable duplication fees from the processing of this request.

If my request is denied in whole or part, I ask that you justify all deletions by reference to specific exemptions of the act. I will also expect you to release all segregable portions of otherwise exempt material. I, of course, reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

I look forward to your reply within 20 business days, as the statute requires. Thank you for your assistance.

Sincerely,


Margaret Foster
Associate

+1 843.371.1625

info@quinlan.io

# EXHIBIT

# B

# quinlan

| **Charleston** | **Washington** |
|---|---|
| 38 Romney Street, Suite 202 | 1901 North Fort Myer Drive, Suite 1021 |
| Charleston, South Carolina 29403 | Arlington, VA 22209 |

May 10, 2018

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
170 Marcel Drive
Winchester, VA 22602-4843

Dear FOIA Officer:

Pursuant to the terms of the Freedom of Information Act, 5 U.S.C. § 552, I formally request that you, in your official capacity, provide me with copies of:

- All of Senator Johnny Isakson's correspondence/communications with the FBI relating to MiMedx, Parker Petit, or Marc Cohodes

I would like to receive the information in an electronic format, if possible. I agree to pay reasonable duplication fees from the processing of this request.

If my request is denied in whole or part, I ask that you justify all deletions by reference to specific exemptions of the act. I will also expect you to release all segregable portions of otherwise exempt material. I, of course, reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

I look forward to your reply within 20 business days, as the statute requires. Thank you for your assistance.

Sincerely,


Margaret Foster
Associate
Quinlan


+1 843.371.1625                                                          info@quinlan.io

EXHIBIT

C



**U.S. Department of Justice**

Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

---

*Telephone: (202) 514-3642*

July 16, 2018

Ms. Margaret Foster
Quinlan                                       Re:     DOJ-2018-006108 (OLA)
margaret@quinlan.io                                   VRB:VAV:KJK

Dear Ms. Foster:

     This responds to your Freedom of Information Act (FOIA) request dated May 10, 2018, for correspondence with Senator Johnny Isakson pertaining to MiMedx and Parker "Pete" H. Petit.  This response is made on behalf of the Office of Legislative Affairs. [1]

     Please be advised that a search has been conducted of the electronic database of the Departmental Executive Secretariat, which maintains certain Office of Legislative Affairs records, including records of Department correspondence, and no records responsive to your request were located.

     For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c) (2012 & Supp. IV 2016).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

     You may contact our FOIA Public Liaison, Douglas Hibbard, for any further assistance and to discuss any aspect of your request at: Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001; telephone at 202-514-3642; or facsimile at 202-514-1009.

     Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

---

[1] Your request was originally directed to the FOIA/PA Mail Referral Unit (MRU), Justice Management Division, for appropriate routing.  MRU routed the request to the Criminal Division (CRM), who then sent the request to this Office for processing and direct response to you.  The MRU and CRM tracking numbers associated with this request are EMRUFOIA051018-1 and CRM-300669585, respectively.

-2-

If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal at https://foiaonline.gov/foiaonline/action/public/home.  Your appeal must be postmarked or electronically submitted within ninety days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

# EXHIBIT

# D



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

December 11, 2018

MS. MARGARET FOSTER
QUINLAN
SUITE 202
38 ROMNEY STREET
CHARLESTON, SC 29403

FOIPA Request No.: 1405921-000
Subject: MiMedx

Dear Ms. Foster:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.   Below you will find check boxes under the appropriate statute headings which indicate the types of exemptions asserted to protect information which is exempt from disclosure.   The appropriate exemptions are noted on the enclosed pages next to redacted information.   In addition, a deleted page information sheet was inserted to indicate where pages were withheld entirely and identify which exemptions were applied.   The checked exemptions boxes used to withhold information are further explained in the enclosed Explanation of Exemptions.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☑ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

43 page(s) were reviewed and 10 page(s) are being released.

Below you will also find additional informational paragraphs about your request.   Where applicable, check boxes are used to provide you with more information about the processing of your request.   Please read each item carefully.

☐  Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

    ☐  This information has been referred to the OGA(s) for review and direct response to you.
    ☐  We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

☐  In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the Freedom of Information Act (FOIA).  See 5 U.S.C. § 552(c) (2006 & Supp. IV (2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us."  The FOIPA Request Number listed above has been assigned to your request.  Please use this number in all correspondence concerning your request.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIA online portal by creating an account on the following website:  https://www.foiaonline.gov/foiaonline/action/public/home.  Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."  Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS) at 877-684-6448, or by emailing ogis@nara.gov.  Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.  If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."  Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

☐  The enclosed material is from the main investigative file(s), meaning the subject(s) of your request was the focus of the investigation.  Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).  Our experience has shown such additional references, if identified to the same subject of the main investigative file, usually contain information similar to the information processed in the main file(s).  As such, we have given priority to processing only the main investigative file(s) given our significant backlog.  If you would like to receive any references to the subject(s) of your request, please submit a separate request for the reference material in writing. The references will be reviewed at a later date, as time and resources permit.

☑  See additional information which follows.


Sincerely,

David M. Hardy
Section Chief
Record/Information
    Dissemination Section
Information Management Division


Enclosure(s)

The enclosed documents represent the final release of information responsive to your FOIA request.  This material is being provided to you at no charge.

To minimize costs to both you and the FBI, duplicate copies of the same document were not processed.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal  privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1405921-0

Total Deleted Page(s) = 33
Page 4 ~ b6; b7C; b7E;
Page 5 ~ b6; b7C; b7E;
Page 6 ~ b6; b7C; b7E;
Page 7 ~ b6; b7C; b7E;
Page 8 ~ b6; b7C; b7E;
Page 9 ~ b6; b7C; b7E;
Page 10 ~ b6; b7C; b7E;
Page 11 ~ b6; b7C; b7E;
Page 12 ~ b6; b7C; b7E;
Page 13 ~ b6; b7C; b7E;
Page 14 ~ b6; b7C; b7E;
Page 15 ~ b6; b7C; b7E;
Page 18 ~ Duplicate;
Page 19 ~ Duplicate;
Page 20 ~ Duplicate;
Page 21 ~ Duplicate;
Page 26 ~ Duplicate;
Page 27 ~ Duplicate;
Page 30 ~ Duplicate;
Page 31 ~ Duplicate;
Page 32 ~ Duplicate;
Page 33 ~ Duplicate;
Page 34 ~ Duplicate;
Page 35 ~ Duplicate;
Page 36 ~ Duplicate;
Page 37 ~ Duplicate;
Page 38 ~ Duplicate;
Page 39 ~ Duplicate;
Page 40 ~ Duplicate;
Page 41 ~ Duplicate;
Page 42 ~ Duplicate;
Page 43 ~ Duplicate;
Page 44 ~ Duplicate;

```
XXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee X
X    For this Page      X
XXXXXXXXXXXXXXXXXXXXXXX
```

# JOHNNY ISAKSON

## UNITED STATES SENATOR · GEORGIA

## Fax Cover Sheet

**One Overton Park**
**3625 Cumberland Boulevard**
**Suite 970**
**Atlanta, Georgia 30339**
**770-661-0999**
**770-661-0768 (Fax)**

| | | | |
|---|---|---|---|
| **To:** | Congressional | **From:** | |
| **Fax:** | 202-324-6490 | **Pages:** | including cover |
| **Date:** | 11/20/17 | | |

b6
b7C
b7E

**Subject:**

b6
b7C

## Comments:

_____ in touch with our office regarding assistance in reaching

out to the FBI _____                                        b7E

_____ We

appreciate all appropriate action in accordance with established policies and procedures.

I can be reached at _____ with any questions.                            b6
b7C

Nov. 20. 2017 11:21AM                                                    No. 9843  P. 2

JOHNNY ISAKSON
GEORGIA

http://isakson.senate.gov

131 RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510
(202) 224-3643

ONE OVERTON PARK
3625 CUMBERLAND BOULEVARD, SUITE 970
ATLANTA, GA 30339
(770) 661-0999

# United States Senate

## WASHINGTON, DC 20510

VETERANS' AFFAIRS
CHAIRMAN

SELECT COMMITTEE ON ETHICS
CHAIRMAN

FINANCE

HEALTH, EDUCATION,
LABOR, AND PENSIONS
SUBCOMMITTEE ON
EMPLOYMENT AND WORKPLACE
SAFETY, CHAIRMAN

FOREIGN RELATIONS
SUBCOMMITTEE ON
STATE DEPARTMENT AND USAID
MANAGEMENT, INTERNATIONAL OPERATIONS,
AND BILATERAL INTERNATIONAL
DEVELOPMENT, CHAIRMAN

November 20, 2017

Mr. Gregory Brower
Assistant Director of Congressional Affairs
Federal Bureau of Investigation
U.S. Department of Justice
935 Pennsylvania Avenue, Nw, Room 7240
Washington, D.C. 20535

RE                                                                              b6
                                                                                b7C

Dear Mr. Brower:

Please find enclosed correspondence I received from the above-referenced constituent. I would appreciate your review of this information in accordance with established policies and procedures. Upon completion of your review, please forward clarification of your findings to the address below.

In the event my office may be of further assistance, please do not hesitate to contact          at
            Thank you for your efforts in this matter, and I look forward to hearing from you soon.         b6
                                                                                                            b7C

Sincerely,

Johnny Isakson
United States Senate

Enclosure (s)
One Overton Park, Suite 970
3625 Cumberland Blvd
Atlanta, GA 30339
ATTN:                                                                            b6
                                                                                 b7C

☐ **(Isakson)**                                                    b6
                                                                   b7C

**Subject:**                    FW: FBI


**From:** ☐ [mailto ☐ ]                                            b6
**Sent:** Friday, November 17, 2017 3:52 PM                        b7C
**To:** ☐ (Isakson) ☐
**Subject:** RE: FBI


☐                                                                  b6
                                                                   b7C
                                                                   b7E


As a result, we made contact with ☐ who put us in touch with Agent ☐ We spoke to Agent ☐ over
the phone ☐ The next day, we provided Agent ☐                      b6
information, including ☐                                            b7C
☐ We will be happy to ☐ provide it to you.  Although Agent ☐       b7E
☐


We spoke again with Agent ☐ but have not heard from him since this last contact. ☐

                                                                   b6
                                                                   b7C
                                                                   b7E


Thanks,

☐                                                                  b6
                                                                   b7C



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

JAN 2 5 2018

The Honorable Johnny Isakson
United States Senator
Suite 970
One Overton Park
3625 Cumberland Boulevard
Atlanta, GA 30339

Dear Senator Isakson:

I am writing in response to your November 20, 2017 letter to the FBI on behalf of your
constituent [                                    ]   b6
                                                     b7C

In order to protect the integrity of all investigations, the FBI does not generally comment
on the status or existence of any potential investigative matter. Please be assured this matter has
been brought to the attention of the appropriate personnel for any action deemed necessary.

I appreciate your bringing this matter to our attention, and I hope this information will be
helpful to you in responding to [                        ]   b6
                                                             b7C

Sincerely,

J.C. Hacker
Deputy Assistant Director
Criminal Investigative Division

**(DO) (FBI)**

b6
b7C

| | |
|---|---|
| **From:** | (DO) (FBI) |
| **Sent:** | Monday, October 16, 2017 8:58 AM |
| **To:** | (AT) (FBI) |
| **Subject:** | RE: Victim Referral |

b6
b7C

I got a message Sunday evening from an attorney representing [redacted] In the voicemail the attorney said [redacted] I haven't called him back yet, but I apologize for sending this your way [redacted] The Senator gave me the understanding [redacted] When you have a chance could you give me a quick call.  Thanks.

b6
b7C
b7E

SSA [redacted]
Office of Congressional Affairs, FBI
Desk:
Cell:

b6
b7C

-----Original Message-----
From: [redacted] (DO) (FBI)
Sent: Friday, October 13, 2017 4:35 PM
To: [redacted] (AT) (FBI)
Cc: [redacted] (DO) (FBI)
Subject: RE: Victim Referral

b6
b7C

I spoke with [redacted] and gave [redacted] your number. [redacted]

b6
b7C

-----Original Message-----
From: [redacted] (DO) (FBI)
Sent: Friday, October 13, 2017 4:12 PM
To: [redacted] (AT) (FBI)
Cc: [redacted] (DO) (FBI)
Subject: Victim Referral

b6
b7C

As we discussed over the phone, I recently received a call from Senator Johnny Isakson, who informed me that a [redacted]

b6
b7C
b7E

Although I ordinarily offer the complaint hotline number to constituents seeking to file a comlaint. [redacted]

b6
b7C
b7E

1

b6
b7C
b7E

Let me know which makes more sense.  If you have any questions or issues please let me know

SSA
Office of Congressional Affairs, FBI
Desk
Cell:

b6
b7C

‎ (DO) (FBI)                                                    b6
                                                                b7C

From:                        (Isakson)                          b6
Sent:            Monday, October 16, 2017 11:49 AM              b6
To:                          (DO) (FBI)                         b7C
Subject:         RE: Senator Isakson of Georgia

Thank you so much
Really appreciate your fast help on a Friday.
Call on us if we can ever help you.
Best                                                            b6
                                                                b7C

OFFICE OF UNITED STATES SENATOR JOHNNY ISAKSON
DC phone: 202.224.3643
Atlanta phone: 770.661.0999
email:

Visit Johnny's website to learn more about his work in the Senate and to sign up for his newsletter.

From:              (DO) (FBI) [mailto                           b6
Sent: Monday, October 16, 2017 9:13 AM                          b7C
To:                (Isakson)
Subject: RE: Senator Isakson of Georgia

Thank you for setting this call up.  I was able to speak with the Senator Friday afternoon    b6
                                                                                              b7C
                                                                                              b7E

Please thank the Senator for taking the time to call and refer this matter to
us and please don't hesitate to reach out if there is anything else I can assist you with from a Congressional Affairs
standpoint.  And have a great week!

SSA
Office of Congressional Affairs, FBI                            b6
Desk:                                                           b7C
Cell

From:              (Isakson) [mailto                            b6
Sent: Friday, October 13, 2017 2:31 PM                          b7C

1

**To:** [redacted] (DO) (FBI) [redacted]

**Subject:** Senator Isakson of Georgia

b6
b7C
b7E

Hey [redacted] - just left you a voice mail on your [redacted] line, but I wanted to also send you a note.
[redacted] Senator Isakson, likely will be calling you between 3:30pm and 4pm today to pass along some information from
[redacted]
If you need to reach me, my cell is [redacted]
Thank you
[redacted]

[redacted]

**OFFICE OF UNITED STATES SENATOR JOHNNY ISAKSON**
*DC phone:* 202.224.3643
*Atlanta phone:* 770.661.0999
*email:* [redacted]

b6
b7C

Visit Johnny's website to learn more about his work in the Senate and to sign up for his newsletter.

2

☐ **(DO) (FBI)**                                                                                    b6
                                                                                                    b7C

**From:** ☐ (DO) (FBI)
**Sent:** Thursday, November 02, 2017 10:20 AM                                                      b6
**To:** ☐ (AT) (FBI)                                                                                b7C
**Cc:** ☐ (DO) (FBI)                                                                                b7E
**Subject:** FW: ☐
**Attachments:** ☐

☐

I just spoke with ☐ and basically informed him that it was no longer necessary to involve me in his    b6
communications with you and your office.  Please call me if youd like to discuss this matter further, or if there is   b7C
anything I can do to help you from a Congressional Affairs standpoint. ☐

SSA ☐
FBI Congressional Affairs                                                                           b6
Desk: ☐                                                                                             b7C
Cell ☐

**From:** ☐ [mailto ☐ ]
**Sent:** Wednesday, November 01, 2017 7:47 PM                                                      b6
**To:** ☐ (AT) (FBI) ☐ (DO) (FBI ☐                                                                  b7C
**Cc:** ☐                                                                                           b7E
**Subject:** FW: ☐

Agents ☐

        We left messages with both of you today regarding ☐                                         b6
have not heard from you. ☐                                                                          b7C
☐                                                                                                   b7E

        Please contact me as soon as possible to let us know the status of this matter.   My cell is ☐ and
my work number is ☐                                                                                 b6
                                                                                                    b7C
☐

**From:** ☐
**Sent:** Wednesday, November 01, 2017 12:11 PM                                                     b6
**To:** ☐                                                                                           b7C
**Cc:** ☐                                                                                           b7E
**Subject:** ☐

Agent ☐

                                                    1

b6
b7C
b7E

b6
b7C

The information in this message is intended for the addressee only and may contain privileged and confidential information.  If you are not the intended recipient, please immediately stop reading this message, delete it from your system and notify the sender at [                    ] that it has been deleted.  Any unauthorized reading, distribution, dissemination, copying, or other use of the information in this message is strictly prohibited.

b6
b7C

2

# EXHIBIT

# E

# BOERSCH SHAPIRO LLP

**ATTORNEYS AT LAW**

DAVID W. SHAPIRO ■
MARTHA BOERSCH ■
LARA KOLLIOS ■
MATTHEW DIRKES ■

January 15, 2019

**EXPEDITED PROCESSING REQUESTED**

*Via Federal Express Overnight*
Melanie Ann Pustay, Esq.
Director
Office of Information Policy
United States Department of Justice
Suite 11050
1425 New York Avenue NW
Washington, D.C. 20530-0001

Re: <u>**Freedom of Information Act Appeal – FOIPA Request No. 1405921-000**</u>

Dear Director Pustay:

This is an administrative appeal of the partial denial by the Federal Bureau of Investigation ("FBI") of a Freedom of Information Act request submitted by Margaret Foster of Quinlan ("Quinlan").  *See* 5 U.S.C. § 552(a)(6)(A)(ii).  The records in question are correspondence between U.S. Senator Johnny Isakson and the FBI regarding MiMedx Group, Inc. a biomedical company based in Georgia ("MiMedx"), its founder, Parker "Pete" H. Petit ("Petit"), and one of the company's investors, Marc Cohodes ("Cohodes").  The correspondence includes a "Victim Referral" filed by Isakson and an official request from his office for the agency's findings.

This appeal challenges (a) the FBI's decision to withhold 33 pages out of 43 pages that were admittedly reviewed by the FBI, (b) the redactions on the 10 pages that were produced, (c) the FBI's failure to disclose any reports of interview or investigation that its agents prepared before and after their visit to Mr. Cohodes and whose contents were shared in any degree with the senator, (d) correspondence between Senator Isakson and MiMedx and/or any of its officers or employees.

Accompanying this appeal is a waiver by Marc Cohodes of any privacy interests he may have in the withheld and redacted documents, with the exception of his assertion of a privacy

Office of Information Policy
U.S. Department of Justice
January 15, 2019
Page 2

interest in his home address, social security number, and any other personal information that
would allow others to locate his residence.  *See Graff v. FBI*, 822 F. Supp. 2d 23, 33-34 (D.D.C.
2011) (agencies may not categorically deny requests when the third party identified in federal
law enforcement records waives his privacy interest).

Quinlan further requests that this appeal be processed on an expedited basis.

## I.    Background

The records at issue relate to efforts by MiMedx and its then-CEO Parker "Pete" Petit to
enlist U.S. Senator Johnny Isakson to personally encourage the FBI to take action against Marc
Cohodes, a critic of MiMedx's business and accounting practices.  In response to the senator's
complaints about Mr. Cohodes, the FBI sent two of its agents to Mr. Cohodes's home, where the
agents threatened "consequences" if Mr. Cohodes did not stop speaking about MiMedx.  Those
threats violated the First Amendment of the U.S. Constitution and the FBI's own policies.

On May 10, 2018, Quinlan submitted two FOIA requests to the Department of Justice
and the Federal Bureau of Investigation seeking records related to correspondence between
Isakson and the FBI regarding MiMedx, Parker "Pete" H. Petit and Marc Cohodes.  *See* Exhibit
A and Exhibit B.  In an effort to assist the DOJ and FBI in processing the FOIA Request more
efficiently, Quinlan agreed to combine these two separate requests into one and was provided the
Request No. 1405921-000.  The combined requests are referred to herein as the "Isakson
Request."

The Isakson Request sought the following records from the DOJ and FBI's files:

- Correspondence by U.S. Senator Johnny Isakson with the FBI "relating to
  MiMedx, Parker Petit, or Marc Cohodes"
- Correspondence by U.S. Senator Johnny Isakson with the Department of Justice
  "relating to MiMedx and Parker 'Pete' H. Petit"

On July 16, 2018, the Department of Justice's Office of Legislative Affairs  ("OLA")
advised that a search of the electronic database of the Departmental Executive Secretariat, which
maintains certain OLA records, including records of Department correspondence, yielded no
records responsive to Quinlan's request.[1]  *See* Exhibit C.

---

[1] The Quinlan Request was originally directed to the FOIA/PA Mail Referral Unit
(MRU), Justice Management Division.  MRU routed the request to the Criminal Division
(CRM), who then sent the request to the Office of Legislative Affairs for processing.  The MRU,
CRM and OLA tracking numbers associated with this request are EMRUFOIA051018-1, CRM-
300669585, and DOJ-2018-006108, respectively.

Office of Information Policy
U.S. Department of Justice
January 15, 2019
Page 3

On December 11, 2018, the FBI issued a partial denial of the Isakson request, releasing 10 out of 43 pages of reviewed records, citing Exemption 6, Exemption 7(C), and Exemption 7(E).  *See* Exhibit D.  The produced documents were redacted so thoroughly that the redactions obscure nearly every relevant detail.

The FBI thus appears to have identified 43 responsive pages of documents, removed 33 or 34 pages in their entirety, and then produced 10 pages of largely-redacted emails and letters. See page 4 of the FOIA response entitled "Deleted Page Information Sheet."

The FBI did not explain why 33 pages were deleted from the production.  It asserted that 21 pages were "duplicate," but did not explain what those pages duplicated or why duplicates of responsive documents should not be disclosed.  As to the 10 produced pages, the FBI claimed those contained information that falls within Exemptions 6, 7(C), and 7(E).

The FBI advised the Wall Street Journal that any action concerning Mr. Cohodes is now "closed."[2]  FOIA exemptions are less applicable in closed matters because disclosure cannot interfere with ongoing proceedings.  *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1097 (D.C. Cir. 2014) ("The cases are closed—not pending or contemplated—and therefore are not proceedings with which disclosure may interfere.").

Correspondence dated October 13, 2017, October 16, 2017, November 1, 2017, November 2, 2017, November 17, 2017, and November 20, 2017 between Isakson's office and the FBI was redacted almost in its entirety, shielding from public view nearly every detail specific to the now-closed case.  *See* Exhibit D.

## II.    Argument

### The Purpose and Scope of the Freedom of Information Act

FOIA embodies "a general philosophy of full agency disclosure," *Department of the Air Force v. Rose*, 425 U.S. 352, 360 (*quoting* S. Rep. No. 813, 89th Cong., 1st Sess. 3 (1965)).  "The 'basic purpose' of the Freedom of Information Act … is 'to open agency action to the light of public scrutiny.'"  *Liberman v. Dep't of Transportation*, 227 F. Supp. 3d 1, 2 (D.D.C. 2016) (*quoting Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989)).

---

[2] Gretchen Morgenson and Charley Grant, "Sen. Isakson called FBI on Behalf of MiMedx Group," *The Wall Street Journal*, December 27, 2018, https://www.wsj.com/articles/sen-johnny-isakson-called-fbi-on-behalf-of-mimedx-group-11545934861 (accessed January 8, 2019).

Office of Information Policy
U.S. Department of Justice
January 15, 2019
Page 4

FOIA mandates that an agency disclose records on request, unless they fall within one of nine exemptions. These exemptions are "explicitly made exclusive" and must be "narrowly construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citations omitted).

Critically, it is the *agency*, not the requestor, that "bears the burden to establish the applicability of a claimed exemption to any reports or portions of records it seeks to withhold. *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 673 (D.C. Cir. 2016).

Agencies asked to produce documents must identify *specific* privacy interests implicated by the information and then balance those interests against the public interest that may be served or disserved by disclosure. *See U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 762 (1989).

An agency must justify any exemption on a document-by-document basis, and "it is now axiomatic that in order to satisfy its burden of establishing that an exemption claim is justified, the government may not rely on 'conclusory and generalized allegations.'" *War Babes v. Wilson*, 770 F. Supp. 1, 4 (D.D.C. 1990) (*quoting Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973)). Where the agency has done nothing more than "parrot the statutory standard" in justifying an exemption, that explanation fails. *Bagwell v. Dep't of Justice*, 2015 WL 9272836, at \*2 and \*4 (D.D.C. Dec. 18, 2015).

Section 552(a)(2) also requires the agency to explain "fully in writing" its justification for refusing to disclose records under an "unwarranted invasion of privacy" claim. 5 U.S.C. § 552(a)(2). Even if it can fully justify the application of that exemption, the agency may only redact "identifying details," and not – as the FBI has done here – redact the substance of the communications. Identifying details might include addresses, telephone numbers, and social security numbers.

## The FBI Failed to Produce Records of its Interactions With MiMedx and Marc Cohodes

The FBI regularly conducts investigations and documents its activities. Here, the FBI responded to a senator's request by directing two agents from its San Rafael office to confront Mr. Cohodes about his public statements concerning MiMedx. Those agents undoubtedly recorded the interaction in a memorandum or report, yet the FBI produced nothing reflecting the agents' own conduct.

Your Office should direct the FBI to produce those reports to the extent their content, or any part of the content, was shared with Senator Isakson.

In addition, the FBI identified 33 pages of documents that were responsive, but which it decided not to produce. The only explanation for that decision was the FBI's reference to 21 of those pages as "duplicate." Duplicate responsive records must be produced. Those duplicates

Office of Information Policy
U.S. Department of Justice
January 15, 2019
Page 5

may reflect distributions to different people or agencies that the public has the right to know about.  The number of "duplicate" pages is minimal and thus would not be burdensome for the FBI to produce.

Your Office should direct the FBI to produce all documents that it withheld.

### The FBI Incorrectly Invoked Exceptions to FOIA

With respect to the documents that were produced and that were also redacted, the FBI has claimed that virtually all of the details of communications among Senator Isakson, MiMedx, and the FBI about Marc Cohodes are private – and so private that disclosing them would constitute a "clearly unwarranted invasion of personal privacy."  To state the proposition is to reject it.  A senator, a federal law enforcement agency, and a publicly traded corporation (which has also publicly admitted to filing false financial statements with the SEC) are nothing other than two public servants and a public corporation.  There are no personal privacy interests among those three parties.

Moreover, the FBI has failed to show that its invocations of law enforcement exemptions are justified.  Exemption 7(C) cannot apply to cases that are now widely known and adjudicated, and Exemption 7(E) does not apply to investigatory techniques that are already widely known.  The FBI provided no written explanation of why disclosure of the contents of the responsive documents was justified.

### Exemption 6 Does Not Justify Withholding the Public Documents or the Redactions

The FBI claims that it may withhold and redact information in responsive documents under Exemption 6, which applies only where release of  "personnel and medical and similar files … would constitute a *clearly unwarranted* invasion of personal privacy."  5 U.S.C. § 552(b)(6) (emphasis added).  The FBI has not, and cannot, meet the standard for this exemption.

*First*, the FBI has not explained "fully in writing" the personnel, medical or similar file that was implicated by the FOIA request.  It did not then explain what significant privacy interest someone had in that information.  And it did not explain why disclosure of that personal privacy would be unwarranted.  Nor could it.

Communications between the senator, MiMedx, and the FBI did not concern a medical or personnel file, or any file that is similar to such files.  That alone makes Exemption 6 inapposite.  *See Schonberger v. NTSB*, 508 F. Supp. 941, 942 (D.D.C. 1981) ("To satisfy exemption six, the defendants must meet both aspects of the statutory test, showing that the material requested 1) is part of a personnel, medical, or similar file, and if so 2) would, if disclosed publicly, constitute a clearly unwarranted invasion of *personal privacy*.") (emphasis added).  "If no significant privacy interest is implicated . . . FOIA demands disclosure."  *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989).

Office of Information Policy
U.S. Department of Justice
January 15, 2019
Page 6

"Similar files" means files that contain *personal* information about particular individuals, *United States Department of State v. Washington Post Co.*, 456 U.S. 595 (1982).  In other words, files are not similar to personnel or medical files unless are "detailed records containing personal information" about particular people, *Cook v. Nat'l Archives & Records Admin.*, 758 F.3d 168, 175 (2d Cir. 2014).  For example, names, employment information, and limited financial information that doesn't disclose "intimate details" of one's finances are not "personal."  *See Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982).

No personal files were implicated by the request here.  Files concerning the communications among the senator, MiMedx, and the FBI concerned whether the FBI would take action to try to silence Marc Cohodes.  To the extent that the files concern Mr. Cohodes personally, he advised the Department of Justice he has no concerns about the release of his name or the details of the FBI's threats to him.  To the contrary, he has filed complaints with the Director of the FBI and its Inspector General about the FBI's threats to him.  *See Washington Post Co.*, 456 U.S. at 602 (personal information is information that "applies to a particular individual").  The privacy interest inherent in Exemption 6 "belongs to the individual, not the agency holding the information." *Reporters Comm.*, 489 U.S. at 763-65.  The FBI cannot invoke the exemption to withhold information that pertains to someone who has no objection to its release. *Id.* at 771.

Moreover, there is nothing "personal" about what the FBI (and the other players) did here:  the senator used his political position and power to encourage the FBI to exercise its investigative powers in a particular way.  That is purely a business transaction; there is nothing personal about it.

In addition, MiMedx and its attorneys *affirmatively* contacted Senator Isakson and asked him to file a complaint about Mr. Cohodes with the FBI.  Their names are thus not private or personal in these circumstances.  The only person who might have a privacy interest in that scenario is Mr. Cohodes, who was accosted at his home by FBI agents and threatened.  But Mr. Cohodes has every interest in having the documents disclosed, as his accompanying letter states.

*Second*, the FBI has not demonstrated, and cannot demonstrate, that the as-yet unidentified privacy interests of MiMedx, Senator Isakson, or the FBI are sufficiently important to overcome the public interest in disclosure of responsive documents.  In evaluating an assertion of Exemption 6, a court must "balance the public interest in disclosure against the interest Congress intended Exemption 6 to protect," and any such privacy interest must be "substantial." *Am. Immigration Lawyers Ass'n*, 830 F.3d at 673; *see also Department of the Air Force v. Rose*, 425 U.S. 352, 380 n.19 (1976) ("Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities.").

Office of Information Policy
U.S. Department of Justice
January 15, 2019
Page 7

     The redacted records reflect only correspondence between Isakson and the FBI and follow-up complaints and discussions – all generated because Mr. Cohodes was criticizing a publicly-traded company.  Since MiMedx, the senator, and the agents or others voluntarily chose to act to threaten Mr. Cohodes, it cannot be an "unwarranted" invasion of their privacy to disclose what they said and did.

     *Third*, the FBI may have an interest in keeping ongoing investigations private, pending a decision by the U.S. Attorney whether to prosecute a case, but the FBI has no such interest here. The FBI never presented any case against Mr. Cohodes to federal prosecutors or to a grand jury, and it has publicly stated to the Wall Street Journal that the "matter" of its visit to Mr. Cohodes is closed.

### Exemption 7(C) Does Not Justify Withholding the Public Documents or the Redactions

     The FBI also cited Exemption 7(C) to justify redacting portions of the responsive documents.  This exemption, like Exemption 6, applies only where release of records "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  It is the law enforcement counterpart to Exemption 6.  It protects the "'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.'"  *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990).  It applies only to individual privacy interests, and not to any claims of privacy by a corporation, a senator acting in his role as an elected official, or the FBI.  *See Reporters Comm.*, 489 U.S. at 764 n.16 (citing authorities supporting proposition that privacy rights belong to individuals).

     The protective scope of Exemption 7(C) *as to third parties* (and the Senator, MiMedx, and the FBI are not third parties) is limited to "the specific information to which it applies [i.e., names, addresses and other identifying information], [but] not the entire page or document in which the information appears[.]"  *Maydak v. U.S. Dep't of Justice*, 254 F. Supp. 2d 23, 43 (D.D.C. 2003)  (*citing Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000)).

     There are no private documents at issue here; all are communications among three unaffiliated parties.  All three of those parties are public entities in one fashion or another – a politician, a federal law enforcement agency, and a public company.  All three acted in concert to stifle public criticism by a well-known investor.  None asked the FBI for confidentiality, and the FBI did not conduct any undercover or otherwise secret investigation.

     All of the communications at issue were made voluntarily – and with the hope and intention that Mr. Cohodes would be confronted with the full force of the FBI's intimidating power.  None of the parties to the communications was the subject of an FBI generated investigation; those parties generated the investigation.  Nothing about the communications implicates anyone's personal privacy, let alone an "unwarranted invasion" of personal privacy.

Office of Information Policy
U.S. Department of Justice
January 15, 2019
Page 8

In short, FOIA was meant to require disclosure in exactly this situation:  one citizen invoked the power of the Senate and the FBI to shut down criticism by another citizen.  The public question involved is clear:  how did the FBI function in this particular circumstance?

### Exemption 7(E) Does Not Justify Withholding the Public Documents or the Redactions

The FBI redacted portions of the responsive documents because, it claimed, their production "would disclose techniques and procedures for law enforcement investigations or prosecutions . . .  if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

"Exemption 7(E) only exempts investigative techniques not generally known to the public."  *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995); *see Rugiero v. DOJ*, 257 F.3d 534, 551 (6th Cir. 2001).  Indeed, "[i]f an agency record discusses 'the application of [a publicly known technique] to ... particular facts,' the document is *not exempt* under 7(E)."  *Am. Civil Liberties Union of N. California v. Dep't of Justice*, 880 F.3d 473, 491 (9th Cir. 2018) (rejecting agency invocation of Exemption 7(E) to withhold records describing methods to obtain a suspect's location information) (emphasis added).

Senator Isakson's "Victim Referral" and his request for follow-up information did not ask the FBI to use undisclosed law enforcement techniques.  The Senator asked the FBI to take action against Marc Cohodes, at the behest of MiMedx, and the FBI complied by sending two FBI agents out to threaten Mr. Cohodes into silence.  That is standard, well-known (albeit heavy handed and unconstitutional) law enforcement.  Unless the FBI can demonstrate that it has a legal and secret program designed to stifle the expression of ideas and opinions, the FBI cannot demonstrate that Exemption 7(E) applies here.

The FBI will be hard pressed to demonstrate that it has a program designed to send agents out to tell people not to post comments and opinions on the internet because the agency's own operating manual *prohibits* conducting any investigation at all that implicates the exercise of First Amendment rights.  *See* FBI Domestic Investigations and Operations Guide – DIOG – 2013 Version Part 01 at ¶¶ 3.3.1.3 and 3.3.1.4 (agents must "[e]nsure that civil liberties and privacy are protected throughout the Assessment or investigative process" and may "[c]onduct <u>no</u> investigative activity based solely on the exercise of First Amendment activities") (emphasis in original); *see id*. ¶ 5.3 (same).

On the other side of the scale, the public interest in knowing the reasons why the FBI sent two armed agents to a man's home to tell him to stop talking about a public company, violating its own requirement to use the least intrusive method of inquiry, *see id*. ¶4.4.1, is significant.  The public certainly has an interest in knowing that government employees have been used by a corporate political contributor to silence its critics.

Office of Information Policy
U.S. Department of Justice
January 15, 2019
Page 9

The FBI also cannot demonstrate that its "technique" of interviewing people, if known to the public, would allow criminals to circumvent the law. Indeed, the FBI did what any ordinary investigator would do when acceding to the requests of a powerful and influential member of Congress: it confronted Mr. Cohodes with two FBI agents who essentially told him to stop talking about MiMedx or there would be "consequences."

The correspondence from MiMedx to the senator and from the senator to the FBI did not implicate a secret law enforcement technique. The conduct of the FBI similarly did not implicate any law enforcement technique. Everyone in America knows that FBI agents conduct interviews. Disclosure of the communications that led to the Cohodes interview and reports reflecting that interview would not damage a secret investigative technique.

## The FBI Must Release All Reasonably Segregable Information

FOIA directs the FBI to segregate and release all information that does not merit protection. 5 U.S.C. § 552(a)(8)(A)(ii)(II). In its partial production, the FBI redacted every piece of information remotely relating to these individual cases, regardless of whether the information was sensitive or related to the petitioner himself (or someone else). Reasonable efforts to segregate non-exempt information are mandated by the law.

## The Public Interest In Disclosure Supports Expedited Processing of This Appeal

Quinlan requests that your Office respond to this appeal on an expedited basis pursuant to 28 C.F.R. § 16.5(e). The undersigned certifies that the FOIA Request, and this appeal, relate to matters on which there is an "urgency to inform the public about an actual or alleged Federal Government activity . . . [and is] . . . made by a person who is primarily engaged in disseminating information." 28 C.F.R. § 16.5(e)(1)(ii). Quinlan functioned here as an agent of a person whose primary professional activity is information dissemination. Specifically, Quinlan's principal has published multiple reports about MiMedx's business and accounting practices, and it has followed and commented on MiMedx's practice of stifling critics through lawsuits, among other tactics. There is, therefore, an urgency to inform the public about MiMedx's and others' conduct regarding Mr. Cohodes.

In addition, the press has followed and reported on MiMedx's problems – and its efforts to silence critics – numerous times since August 2017. Most recently, on December 27, 2018, the Wall Street Journal published a front-page account of Senator Isakson's conduct. That article has generated 143 comments from WSJ subscribers to date. https://www.wsj.com/articles/sen-johnny-isakson-called-fbi-on-behalf-of-mimedx-group-11545934861?mod=searchresults&page=1&pos=1. Among those comments are the following:

Office of Information Policy
U.S. Department of Justice
January 15, 2019
Page 10

- "Good Ole Boy Johnny Isaakson works for a wealthy fraudster, not the people of Georgia. The FBI should be ashamed of itself for willingly being used as his and Parker "Pete" Petit's tool.  It engaged in intimidation, not investigation."

- "A U.S. senator using a federal agency to harass a critic of a donor and friend is misconduct, and, certainly newsworthy."

- "The guilty party is not the geezer but the FBI for offering preferential treatment to a friend of the Senator while Mr. Cohodes was informing the authorities of a possible fraud against taxpayers. Did FBI show same zeal in protecting the Govts best interest.  Seems the FBI acted like keystone cops on leaving the premises only when local Sheriff arrived on the scene."

- "I think the issue is much more than Blue or Red, Republicans or Democrats. When a Congressperson can direct the FBI to investigate individual's Tweets/commentary/writing/speech this should raise the red flag to any freedom loving, Constitution believer American.  If the FBI knocks on my door for my Tweets, I'll call 911."

- "To me, this is just another prism of light shining on the abuse of power, corruption and fraud that has taken place at Mimedx, a company which had a market cap approaching $2 billion a year ago. There has been lots of money to go around for government officials, corporate executives, commission based sales people with kickbacks to doctors and hospital workers, all at the expense of tax payers. This angle of the Mimedx story does not even take into account matters of protecting human health which could be considered worse with lack of FDA approvals. If you examine the work of Mr Cohodes and others, you will find volumes of examples which tax payers and the public should be concerned about. As a reader of this paper, and likely an investor, one should consider that this company has withdrawn 7 YEARS of financial statements ( no repercussions ) and its auditor Ernst & Young recently resigned stating that sufficient internal controls within the company do not exist to produce statements!"

- "As a current constituent of Sen. Isakson, I would be hard pressed to justify calling my Senator and asking him/her to contact the FBI to bully someone who is saying bad things about me on Twitter.  Senator Isakson is up for re-election in 2020 and it may be time to show him the door."

Office of Information Policy
U.S. Department of Justice
January 15, 2019
Page 11


       In addition, Mr. Cohodes has filed an ethics complaint against Senator Isakson, a copy of which is available on your request.

       In sum, the public and the press have a strong interest in full disclosure of the materials, and in having the materials disclosed in an expedited fashion.

       Accordingly, Quinlan respectfully requests that the FBI respond on an expedited basis.

       If you have any questions about this administrative appeal, please contact me by email at dshapiro@boerschshapiro.com or telephone at 415-500-6644.


                             Sincerely,

                             David W. Shapiro

Enclosures.

# EXHIBIT

# F



January 15, 2020

**<u>VIA E-MAIL</u>**

FOIA/PA Mail Referral Unit
United States Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001
Phone: (202) 616-3837
E-mail: MRUFOIA.Requests@usdoj.gov

Re:     <u>Freedom of Information Act Request to the Department of Justice</u>

Dear Sir or Madam:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I formally request that you provide me with copies of:

1. All correspondence and communications between Senator Johnny Isakson, his staff, his employees, or any person acting on his behalf and the United States Department of Justice referring or relating to MiMedx, Parker Petit, or Marc Cohodes.
2. All documents and communications in the possession, custody, or control of the United States Department of Justice referring or relating to Marc Cohodes.

Please provide the information in an electronic format, if possible.  I agree to pay reasonable duplication fees from the processing of this request.  Should such fees exceed $1,500.00, please contact me to confirm that I will pay fees in excess of that amount.

If my request is denied in whole or part, please justify all denials with reference to specific exemptions in the Act.  I expect that you will release all segregable portions of otherwise exempt material.

Marc Cohodes has authorized the release to me of all information that relates or refers to him.  Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing the disclosure of information about him to me.

(continued on next page)

**299 Third Street, Suite 106, Oakland, California 94607**

Department of Justice
January 15, 2020
Page 2

My contact information is as follows:

Matthew W. Turetzky
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, California 94607
mturetzky@nortonlaw.com
Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

Enclosure

299 Third Street, Suite 106, Oakland, California 94607

**U.S Department of Justice**

# Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]   Marc Cohodes

Citizenship Status [2]   U.S. Citizen                    Social Security Number [3]

Current Address

Date of Birth                              Place of Birth

## OPTIONAL:  Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

### Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [4]                                          **Date**   1/13/2020

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

FORM DOJ-361



January 15, 2020

<u>**VIA ONLINE SUBMISSION**</u>

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
170 Marcel Drive
Winchester, VA 22602-4843

Re:     <u>Freedom of Information Act Request to the Federal Bureau of Investigation</u>

Dear Mr. Hardy:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I formally request that you provide me with copies of:

1.  All correspondence and communications between Senator Johnny Isakson, his staff, his employees, or any person acting on his behalf and the Federal Bureau of Investigation referring or relating to MiMedx, Parker Petit, or Marc Cohodes.
2.  All documents and communications in the possession, custody, or control of the Federal Bureau of Investigation referring or relating to Marc Cohodes.

Please provide the information in an electronic format, if possible.  I agree to pay reasonable duplication fees from the processing of this request.  Should such fees exceed $1,500.00, please contact me to confirm that I will pay fees in excess of that amount.

If my request is denied in whole or part, please justify all denials with reference to specific exemptions in the Act.  I expect that you will release all segregable portions of otherwise exempt material.

Marc Cohodes has authorized the release to me of all information that relates or refers to him. Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing the disclosure of information about him to me.

(continued on next page)

299 Third Street, Suite 106, Oakland, California 94607

Federal Bureau of Investigation
January 15, 2020
Page 2

My contact information is as follows:

Matthew W. Turetzky
THE NORTON LAW FIRM PC
299 Third Street, Suite 106
Oakland, California 94607
mturetzky@nortonlaw.com
Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

Enclosure

**U.S Department of Justice**

# Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]   Marc Cohodes

Citizenship Status [2]   U.S. Citizen                      Social Security Number [3] ▓▓▓▓▓▓▓▓

Current Address ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Date of Birth ▓▓▓▓▓▓▓       Place of Birth ▓▓▓▓▓▓▓▓▓▓▓▓

## OPTIONAL:  Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

### Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature** [4] _____       **Date** 1/13/2020

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.



January 15, 2020

**VIA ONLINE SUBMISSION**

Kevin Krebs
Assistant Director
FOIA/Privacy Unit
Executive Office for United States Attorneys
Department of Justice
175 N Street, N.E.
Suite 5.400
Washington, DC 20530-0001

Re:    Freedom of Information Act Request to the Executive Office for United States Attorneys

Dear Mr. Krebs:

Pursuant to the Freedom of Information Act, 5 U.S.C. § 552, I formally request that you provide
me with copies of:

1. All correspondence and communications between Senator Johnny Isakson, his staff, his
   employees, or any person acting on his behalf and the United States Attorney's Office for
   the Southern District of New York referring or relating to MiMedx, Parker Petit, or Marc
   Cohodes.
2. All documents and communications in the possession, custody, or control of the United
   States Attorney's Office for the Southern District of New York referring or relating to
   Marc Cohodes.

Please provide the information in an electronic format, if possible.  I agree to pay reasonable
duplication fees from the processing of this request.  Should such fees exceed $1,500.00, please
contact me to confirm that I will pay fees in excess of that amount.

If my request is denied in whole or part, please justify all denials with reference to specific
exemptions in the Act.  I expect that you will release all segregable portions of otherwise exempt
material.

Marc Cohodes has authorized the release to me of all information that relates or refers to him.
Enclosed with this letter please find form DOJ-361, signed by Mr. Cohodes, authorizing the
disclosure of information about him to me.

(continued on next page)

299 Third Street, Suite 106, Oakland, California 94607

Department of Justice
January 15, 2020
Page 2

My contact information is as follows:

Matthew W. Turetzky

THE NORTON LAW FIRM PC

299 Third Street, Suite 106

Oakland, California 94607

mturetzky@nortonlaw.com

Tel: (510) 906-4905

Please let me know if you have any questions about this request.

Very truly yours,

Matthew W. Turetzky

Enclosure

**U.S Department of Justice**

# Certification of Identity



FORM APPROVED OMB NO.
1103-0016 EXPIRES 05/31/2020

**Privacy Act Statement.** In accordance with 28 CFR Section 16.41(d) personal data sufficient to identify the individuals submitting requests by mail under the Privacy Act of 1974, 5 U.S.C. Section 552a, is required. The purpose of this solicitation is to ensure that the records of individuals who are the subject of U.S. Department of Justice systems of records are not wrongfully disclosed by the Department. Requests will not be processed if this information is not furnished. False information on this form may subject the requester to criminal penalties under 18 U.S.C. Section 1001 and/or 5 U.S.C. Section 552a(i)(3).

Public reporting burden for this collection of information is estimated to average 0.50 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Suggestions for reducing this burden may be submitted to the Office of Information and Regulatory Affairs, Office of Management and Budget, Public Use Reports Project (1103-0016), Washington, DC 20503.

Full Name of Requester [1]    Marc Cohodes

Citizenship Status [2]    U.S. Citizen                  Social Security Number [3] ███████████

Current Address ███████████████████████████████████

Date of Birth ████████              Place of Birth ███████████

## OPTIONAL: Authorization to Release Information to Another Person

This form is also to be completed by a requester who is authorizing information relating to himself or herself to be released to another person.

Further, pursuant to 5 U.S.C. Section 552a(b), I authorize the U.S. Department of Justice to release any and all information relating to me to:

Matthew W. Turetzky of The Norton Law Firm P.C.

### Print or Type Name

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I am the person named above, and I understand that any falsification of this statement is punishable under the provisions of 18 U.S.C. Section 1001 by a fine of not more than $10,000 or by imprisonment of not more than five years or both, and that requesting or obtaining any record(s) under false pretenses is punishable under the provisions of 5 U.S.C. 552a(i)(3) by a fine of not more than $5,000.

**Signature [4]** _____    **Date** 1/13/2020

---

[1] Name of individual who is the subject of the record(s) sought.

[2] Individual submitting a request under the Privacy Act of 1974 must be either "a citizen of the United States or an alien lawfully admitted for permanent residence," pursuant to 5 U.S.C. Section 552a(a)(2). Requests will be processed as Freedom of Information Act requests pursuant to 5 U.S.C. Section 552, rather than Privacy Act requests, for individuals who are not United States citizens or aliens lawfully admitted for permanent residence.

[3] Providing your social security number is voluntary. You are asked to provide your social security number only to facilitate the identification of records relating to you. Without your social security number, the Department may be unable to locate any or all records pertaining to you.

[4] Signature of individual who is the subject of the record sought.

# EXHIBIT
# G

**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

February 28, 2020

MR. MATTHEW W TURETZKY
THE NORTON LAW FIRM PC
SUITE 106
299 THIRD STREET
OAKLAND, CA 94607

FOIPA Request No.: 1457448-000
Subject: MiMedx (Correspondence between
FBI and Senator Johnny Isakson)

Dear Mr. Turetzky:

The enclosed 10 pages of records were determined to be responsive to your subject and were previously processed and released pursuant to the Freedom of Information Act (FOIA).   Please see the selected paragraphs below for relevant information specific to your request as well as the enclosed FBI FOIPA Addendum for standard responses applicable to all requests.

☑ In an effort to provide you with responsive records as expeditiously as possible, we are releasing documents from previous requests regarding your subject. We consider your request fulfilled.  Since we relied on previous results, additional records potentially responsive to your subject may exist. If this release of previously processed material does not satisfy your request, you may request an additional search for records.  Submit your request by mail or fax to – Work Process Unit, 170 Marcel Drive, Winchester, VA  22602, fax number (540) 868-4997. Please cite the FOIPA Request Number in your correspondence.

☐ Please be advised that additional records responsive to your subject exist. If this release of previously processed material does not satisfy your request, you must advise us that you want the additional records processed.  Please submit your response within thirty (30) days by mail or fax to—Work Processing Unit, 170 Marcel Drive, Winchester, VA  22602, fax number (540) 868-4997.  Please cite the FOIPA Request Number in your correspondence. **If we do not receive your decision within thirty (30) days of the date of this notification, your request will be closed.**

☐ One or more of the enclosed records were transferred to the National Archives and Records Administration (NARA).  Although we retained a version of the records previously processed pursuant to the FOIA, the original records are no longer in our possession.

If this release of the previously processed material does not satisfy your request, you may file a FOIPA request with NARA at the following address:

National Archives and Records Administration
Special Access and FOIA
8601 Adelphi Road, Room 5500
College Park, MD 20740-6001

☐ Records potentially responsive to your request were transferred to the National Archives and Records Administration (NARA), and they were not previously processed pursuant to the FOIA.  You may file a request with NARA using the address above.

☐     One or more of the enclosed records were destroyed.  Although we retained a version of the records previously processed pursuant to the FOIA, the original records are no longer in our possession.  Record retention and disposal is carried out under supervision of the National Archives and Records Administration (NARA) , Title 44, United States Code, Section 3301 as implemented by Title 36, Code of Federal Regulations, Part 1228; Title 44, United States Code, Section 3310 as implemented by Title 36, Code of Federal Regulations, Part 1229.10.

☐     Records potentially responsive to your request were destroyed.  Since this material could not be reviewed, it is not known if it was responsive to your request.  Record retention and disposal is carried out under supervision of the National Archives and Records Administration (NARA)  according to Title 44 United States Code Section 3301, Title 36 Code of Federal Regulations (CFR) Chapter 12 Sub-chapter B Part 1228, and 36 CFR 1229.10.

☐     Documents or information referred to other Government agencies were not included in this release.

Please refer to the enclosed FBI FOIPA Addendum for additional standard responses applicable to your request.  **"Part 1"** of the Addendum includes standard responses that apply to all requests.  **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals.  **"Part 3"** includes general information about FBI records that you may find useful.  Also enclosed is our Explanation of Exemptions.

For questions regarding our determinations, visit the www.fbi.gov/foia website under "Contact Us." The FOIPA Request Number listed above has been assigned to your request.  Please use this number in all correspondence concerning your request.

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."  Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.  Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.  If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."  Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
 Dissemination Section
Information Management Division

Enclosure(s)

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request.  Part 1 of the Addendum includes standard responses that apply to all requests.  Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information.  Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i)      **5 U.S.C. § 552(c).**  Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)].  FBI responses are limited to those records subject to the requirements of the FOIPA.  Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)      **Intelligence Records**.  To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)].  The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].  This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)      **Requests for Records about any Individual—Watch Lists.**  The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].  This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)      **Requests for Records about any Individual—Witness Security Program Records.**  The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)].  This is a standard response and should not be read to indicate that such records do or do not exist.

(iii)      **Requests for Records for Incarcerated Individuals.**  The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].  This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)      **Record Searches.**  The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found.  A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions.  The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS.  Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files.  For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii)      **FBI Records.**  Founded in 1908, the FBI carries out a dual law enforcement and national security mission.  As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)      **Requests for Criminal History Records or Rap Sheets.**  The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet.  These criminal history records are not the same as material in an investigative "FBI file."  An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.  For a fee, individuals can request a copy of their Identity History Summary Check.  Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.  Additionally, requests can be submitted electronically at www.edo.cjis.gov.  For additional information, please contact CJIS directly at (304) 625-5590.

(iv)      **National Name Check Program (NNCP).**  The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.  Please be advised that this is a service provided to other federal agencies.  Private Citizens cannot request a name check.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1457448-0

Total Deleted Page(s) = 33
Page 4 ~ b6; b7C; b7E;
Page 5 ~ b6; b7C; b7E;
Page 6 ~ b6; b7C; b7E;
Page 7 ~ b6; b7C; b7E;
Page 8 ~ b6; b7C; b7E;
Page 9 ~ b6; b7C; b7E;
Page 10 ~ b6; b7C; b7E;
Page 11 ~ b6; b7C; b7E;
Page 12 ~ b6; b7C; b7E;
Page 13 ~ b6; b7C; b7E;
Page 14 ~ b6; b7C; b7E;
Page 15 ~ b6; b7C; b7E;
Page 18 ~ Duplicate;
Page 19 ~ Duplicate;
Page 20 ~ Duplicate;
Page 21 ~ Duplicate;
Page 26 ~ Duplicate;
Page 27 ~ Duplicate;
Page 30 ~ Duplicate;
Page 31 ~ Duplicate;
Page 32 ~ Duplicate;
Page 33 ~ Duplicate;
Page 34 ~ Duplicate;
Page 35 ~ Duplicate;
Page 36 ~ Duplicate;
Page 37 ~ Duplicate;
Page 38 ~ Duplicate;
Page 39 ~ Duplicate;
Page 40 ~ Duplicate;
Page 41 ~ Duplicate;
Page 42 ~ Duplicate;
Page 43 ~ Duplicate;
Page 44 ~ Duplicate;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee X
X   For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1405921-0


Total Deleted Page(s) = 33
Page 4 ~ b6; b7C; b7E;
Page 5 ~ b6; b7C; b7E;
Page 6 ~ b6; b7C; b7E;
Page 7 ~ b6; b7C; b7E;
Page 8 ~ b6; b7C; b7E;
Page 9 ~ b6; b7C; b7E;
Page 10 ~ b6; b7C; b7E;
Page 11 ~ b6; b7C; b7E;
Page 12 ~ b6; b7C; b7E;
Page 13 ~ b6; b7C; b7E;
Page 14 ~ b6; b7C; b7E;
Page 15 ~ b6; b7C; b7E;
Page 18 ~ Duplicate;
Page 19 ~ Duplicate;
Page 20 ~ Duplicate;
Page 21 ~ Duplicate;
Page 26 ~ Duplicate;
Page 27 ~ Duplicate;
Page 30 ~ Duplicate;
Page 31 ~ Duplicate;
Page 32 ~ Duplicate;
Page 33 ~ Duplicate;
Page 34 ~ Duplicate;
Page 35 ~ Duplicate;
Page 36 ~ Duplicate;
Page 37 ~ Duplicate;
Page 38 ~ Duplicate;
Page 39 ~ Duplicate;
Page 40 ~ Duplicate;
Page 41 ~ Duplicate;
Page 42 ~ Duplicate;
Page 43 ~ Duplicate;
Page 44 ~ Duplicate;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee X
X   For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```



# JOHNNY ISAKSON
## UNITED STATES SENATOR · GEORGIA

---

## Fax Cover Sheet

One Overton Park
3625 Cumberland Boulevard
Suite 970
Atlanta, Georgia 30339
770-661-0999
770-661-0768 (Fax)

**To:** _Congressional_     **From:** [ ]          b6
                                                    b7C
**Fax:** _202-324-6490_     **Pages:** [ ] including cover   b7E

**Date:** _11/20/17_

**Subject:** [ ]                                    b6
                                                    b7C

## Comments:

[ ]                in touch with our office regarding assistance in reaching

out to the FBI [ ]                                  b7E

[ ]                                     We

appreciate all appropriate action in accordance with established policies and procedures.

                                                    b6
I can be reached at [ ] with any questions.         b7C

JOHNNY ISAKSON
GEORGIA

http://isakson.senate.gov

131 RUSSELL SENATE OFFICE BUILDING
WASHINGTON, DC 20510
(202) 224-3643

ONE OVERTON PARK
3625 CUMBERLAND BOULEVARD, SUITE 970
ATLANTA, GA 30339
(770) 661-0999

**United States Senate**

WASHINGTON, DC 20510

VETERANS' AFFAIRS
CHAIRMAN

SELECT COMMITTEE ON ETHICS
CHAIRMAN

FINANCE

HEALTH, EDUCATION,
LABOR, AND PENSIONS
SUBCOMMITTEE ON
EMPLOYMENT AND WORKPLACE
SAFETY, CHAIRMAN

FOREIGN RELATIONS
SUBCOMMITTEE ON
STATE DEPARTMENT AND USAID
MANAGEMENT, INTERNATIONAL OPERATIONS,
AND BILATERAL INTERNATIONAL
DEVELOPMENT, CHAIRMAN

November 20, 2017

Mr. Gregory Brower
Assistant Director of Congressional Affairs
Federal Bureau of Investigation
U.S. Department of Justice
935 Pennsylvania Avenue, Nw, Room 7240
Washington, D.C. 20535

RE                                                                    b6
                                                                      b7C

Dear Mr. Brower:

Please find enclosed correspondence I received from the above-referenced constituent. I would appreciate your review of this information in accordance with established policies and procedures. Upon completion of your review, please forward clarification of your findings to the address below.

In the event my office may be of further assistance, please do not hesitate to contact _____ at ____   b6
_____ Thank you for your efforts in this matter, and I look forward to hearing from you soon.   b7C

Sincerely,

Johnny Isakson
United States Senate

Enclosure (s)
One Overton Park, Suite 970
3625 Cumberland Blvd
Atlanta, GA 30339
ATTN:                                                                 b6
                                                                      b7C

_____(Isakson)                                          b6
                                                                b7C

**Subject:**                      FW: FBI


**From:**_____[mailto:_____]                      b6
**Sent:** Friday, November 17, 2017 3:52 PM                      b7C
**To:**_____(Isakson)_____
**Subject:** RE: FBI

                                                                b6
                                                                b7C
                                                                b7E

As a result, we made contact with_____who put us in touch with Agent_____We spoke to Agent____over
the phone_____The next day, we provided Agent_____                        b6
information, including____                                                              b7C
_____We will be happy to_____provide it to you.  Although Agent____     b7E
_____

We spoke again with Agent_____but have not heard from him since this last contact.

                                                                b6
                                                                b7C
                                                                b7E

Thanks,

_____                                              b6
                                                                b7C



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

The Honorable Johnny Isakson                    JAN 2 5 2018
United States Senator
Suite 970
One Overton Park
3625 Cumberland Boulevard
Atlanta, GA 30339

Dear Senator Isakson:

    I am writing in response to your November 20, 2017 letter to the FBI on behalf of your
constituent [                                                                    ]          b6
                                                                                            b7C

    In order to protect the integrity of all investigations, the FBI does not generally comment
on the status or existence of any potential investigative matter. Please be assured this matter has
been brought to the attention of the appropriate personnel for any action deemed necessary.

    I appreciate your bringing this matter to our attention, and I hope this information will be
helpful to you in responding to [                        ]                                  b6
                                                                                            b7C

Sincerely,

J.C. Hacker
Deputy Assistant Director
Criminal Investigative Division

_____ (DO) (FBI)                                                          b6
                                                                                       b7C

From:           _____ (DO) (FBI)                                               b6
Sent:           Monday, October 16, 2017 8:58 AM                                       b6
To:             _____ (AT) (FBI)                                                     b7C
Subject:        RE: Victim Referral

_____

I got a message Sunday evening from an attorney representing _____ In the voicemail the attorney    b6
said_____ I haven't called him back yet, but I apologize for sending this your way ___    b7C
_____ The Senator gave me the understanding _____ When you have a                        b7E
chance could you give me a quick call.  Thanks._____

SSA_____
Office of Congressional Affairs, FBI                                                   b6
Desk_____                                                                     b7C
Cell_____


-----Original Message-----
From_____(DO) (FBI)
Sent: Friday, October 13, 2017 4:35 PM                                                 b6
To_____(AT) (FBI)_____                                                         b7C
Cc:_____(DO) (FBI)_____
Subject: RE: Victim Referral

_____

I spoke with_____and gave____your number._____                                    b6
                                                                                       b7C

-----Original Message-----
From:_____(DO) (FBI)
Sent: Friday, October 13, 2017 4:12 PM                                                 b6
To:_____(AT) (FBI)_____                                                        b7C
Cc:_____(DO) (FBI)_____
Subject: Victim Referral

_____

As we discussed over the phone, I recently received a call from Senator Johnny Isakson, who informed me that a    b6
                                                                                                                  b7C
                                                                                                                  b7E

Although I ordinarily offer the complaint hotline number to constituents seeking to file a complaint._____      b6
                                                                                                                  b7C
                                                                                                                  b7E

1

b6
b7C
b7E

Let me know which makes more sense.  If you have any questions or issues please let me know.

SSA
Office of Congressional Affairs, FBI
Desk
Cell:

b6
b7C

**[REDACTED] (DO) (FBI)**                                          b6
                                                                   b7C

| | |
|---|---|
| **From:** | [REDACTED] (Isakson) [REDACTED] |
| **Sent:** | Monday, October 16, 2017 11:49 AM |
| **To:** | [REDACTED] (DO) (FBI) |
| **Subject:** | RE: Senator Isakson of Georgia |

b6
b7C

Thank you so much [REDACTED]
Really appreciate your fast help on a Friday.
Call on us if we can ever help you.
Best

[REDACTED]                                                        b6
                                                                   b7C

[REDACTED]

**OFFICE OF UNITED STATES SENATOR JOHNNY ISAKSON**
*DC phone:* 202.224.3643
*Atlanta phone:* 770.661.0999
email: [REDACTED]

Visit Johnny's website to learn more about his work in the Senate and to sign up for his newsletter.

**From:** [REDACTED] (DO) (FBI) [mailto [REDACTED]]
**Sent:** Monday, October 16, 2017 9:13 AM                        b6
**To:** [REDACTED] (Isakson) [REDACTED]                           b7C
**Subject:** RE: Senator Isakson of Georgia

[REDACTED]

Thank you for setting this call up.  I was able to speak with the Senator Friday afternoon [REDACTED]   b6
                                                                                                          b7C
                                                                                                          b7E
[REDACTED] Please thank the Senator for taking the time to call and refer this matter to
us and please don't hesitate to reach out if there is anything else I can assist you with from a Congressional Affairs
standpoint.  And have a great week! [REDACTED]

SSA [REDACTED]
Office of Congressional Affairs, FBI
Desk [REDACTED]                                                   b6
Cell [REDACTED]                                                   b7C

**From:** [REDACTED] (Isakson) [mailto [REDACTED]]                b6
**Sent:** Friday, October 13, 2017 2:31 PM                        b7C

1

**To:** [redacted] (DO) (FBI) [redacted]
**Subject:** Senator Isakson of Georgia

b6
b7C
b7E

Hey [redacted] - just left you a voice mail on your [redacted] line, but I wanted to also send you a note.
[redacted] Senator Isakson, likely will be calling you between 3:30pm and 4pm today to pass along some information from
[redacted]
If you need to reach me, my cell is [redacted]
Thank you
[redacted]

[redacted]

**OFFICE OF UNITED STATES SENATOR JOHNNY ISAKSON**
*DC phone:* 202.224.3643
*Atlanta phone:* 770.661.0999
*email:* [redacted]

b6
b7C

Visit Johnny's website to learn more about his work in the Senate and to sign up for his newsletter.

**(DO) (FBI)**

b6
b7C

| | |
|---|---|
| **From:** | (DO) (FBI) |
| **Sent:** | Thursday, November 02, 2017 10:20 AM |
| **To:** | (AT) (FBI) |
| **Cc:** | (DO) (FBI) |
| **Subject:** | FW: |
| **Attachments:** | |

b6
b7C
b7E

I just spoke with [ ] and basically informed him that it was no longer necessary to involve me in his communications with you and your office.  Please call me if youd like to discuss this matter further, or if there is anything i can do to help you from a Congressional Affairs standpoint.

b6
b7C

SSA
FBI Congressional Affairs
Desk:
Cell

b6
b7C

**From:** [ ] [mailto
**Sent:** Wednesday, November 01, 2017 7:47 PM
**To:** [ ] (AT) (FBI) [ ] (DO) (FBI
**Cc:**
**Subject:** FW

b6
b7C
b7E

Agents

We left messages with both of you today regarding [ ] have not heard from you.

b6
b7C
b7E

Please contact me as soon as possible to let us know the status of this matter.   My cell is [ ] and my work number is

b6
b7C

**From:**
**Sent:** Wednesday, November 01, 2017 12:11 PM
**To:**
**Cc:**
**Subject:**

b6
b7C
b7E

Agent

1

b6
b7C
b7E

b6
b7C

The information in this message is intended for the addressee only and may contain privileged and confidential information.  If you are not the intended recipient, please immediately stop reading this message, delete it from your system and notify the sender at [                    ] that it has been deleted.  Any unauthorized reading, distribution, dissemination, copying, or other use of the information in this message is strictly prohibited.

b6
b7C

EXHIBIT 11

**From:** Administrator Email <noreplies@micropact.com>
**Sent:** Friday, March 27, 2020 10:54 AM
**To:** Matt Turetzky <MTuretzky@nortonlaw.com>
**Subject:** Response to FOIA Appeal A-2020-00210

The Office of Information Policy has made its final determination on your FOIA Appeal Number A-2020-00210.  A copy of this determination is enclosed for your review, along with any enclosures, if applicable.  Thank you.



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

---

*Telephone: (202) 514-3642*

Matthew Turetzky
Suite 106
299 Third Street
Oakland, CA  94607

Re:  Appeal No. A-2020-00210

Request No. EOUSA-2020-001161
MWH:EAH

MTuretzky@nortonlaw.com

**VIA: Email**

Dear Matthew Turetzky:

You attempted to appeal from the failure of Executive Office for U.S. Attorneys to respond to your Freedom of Information Act request for access to records concerning communications related to third parties.

Department of Justice regulations provide for an administrative appeal to the Office of Information Policy only after there has been an adverse determination by a component.  See 28 C.F.R. 16.8(a) (2019).  As no adverse determination has yet been made by EOUSA, there is no action for this Office to consider on appeal.

As you may know, the FOIA authorizes requesters to file a lawsuit when an agency takes longer than the statutory time period to respond.  See 5 U.S.C. 552(a)(6)(C)(i).  However, I can assure you that this Office has contacted EOUSA and has been advised that your request is being processed.  If you are dissatisfied with EOUSA's final response, you may appeal again to this Office.

This Office has forwarded a copy of your letter to EOUSA.  You should contact EOUSA's Requester Service Center at (202) 252-6020 for further updates regarding the status of your request.

If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal.  Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

Sincerely,

X_____

Matthew Hurd, Acting Chief, Administrative
Appeals Staff